**SHELTER–LITE, INC., Plaintiff,**

v.

**REEVES BROTHERS, INC., Defendant.**

No. C71–830.

United States District Court,
N. D. Ohio, E. D.

March 19, 1973.

Edward G. Greive, Jack L. Renner, Hamilton, Renner & Kenner, Akron, Ohio, for plaintiff.

S. Leslie Misrock, Charles E. Mc-Kenney, Pennie, Edmonds, Morton, Taylor & Adams, New York City, Jones, Day, Cockley & Reavis, Ellis H. McKay, Cleveland, Ohio, for defendant.

## MEMORANDUM and ORDER

BEN C. GREEN, District Judge:

The plaintiff, an Ohio corporation, has filed a three-count complaint against the defendant, a New York corporation, which has its principal place of business in either New York or North Carolina. The first cause of action alleges infringement by the defendant of United States Letters Patent No. 3,250,662, pertaining to coated fabrics.[1] The second cause of action is stated to be "for unfair competition" and is based upon the allegation that the defendant has been utilizing sales material incorporating false information as to competitive testing of the plaintiff's and defendant's products. The third cause of action is alleged to arise under the antitrust laws, and asserts discrimination in terms of sale by the defendant in order to damage the plaintiff's market position.

The defendant has moved for an order dismissing the first count for lack of venue. Defendant then argues that if the first count is dismissed the second count must also be dismissed, as it lacks independent grounds for federal jurisdiction. The instant motion, which is stated to be brought under Rules 12 and 56 of the Federal Rules of Civil Procedure, is the outgrowth of an earlier motion "to quash service of summons and complaint and to dismiss Counts I and II of the complaint for lack of venue." That motion was denied by the Court on the basis that the record was insufficient to permit a proper adjudication of the questions raised thereunder. Further discovery was then engaged in pertinent to the question of the defendant's business activities within the Northern District of Ohio.

It is admitted by defendant that the present motion does not reach the third count of the complaint. However, the defendant has also moved alternatively for an order pursuant to 28 U.S.C. § 1404(a) transferring the entire action to the Western District of North Carolina.

At this stage of the proceedings, the defendant's motion directed to the complaint must be treated as one for summary judgment. Both the support for, and opposition to, the motion depend on matter beyond the complaint. Although plaintiff has not filed a countermotion, the question has been prepared and briefed by both parties in such a manner as to permit the Court to reach a final determination on the venue question.

Venue in a patent action is governed by 28 U.S.C. § 1400(b), which provides:

Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

In this action, therefore, venue is dependent upon a finding that the defendant has committed acts of infringement and has a regular and established place

---

1. From the proceeding before the Court it appears that both plaintiff and defendant are engaged in the manufacture of a coated cloth product generally utilized in the manufacture of large items such as athletic field covers, truck covers, and the like. It is that type product to which the patent in suit is directed.

of business within the Northern District of Ohio.

Although defendant's motion asserted that it had not committed acts of infringement within this district, at an oral hearing thereon defendant's counsel admitted that under the recent trend of authorities a "close question" would be presented as to whether such acts had been committed. In the Court's opinion, the present record is adequate to support a finding that that element of the statute is satisfied.

The question thus resolves itself to whether the defendant has a regular and established place of business within this jurisdiction.

■ The term "regular and established place of business" is not defined in Section 1400(b). Resolution of that question, therefore, has turned upon the business activities of the defendant, or a representative thereof, in each case. In this action, attention has primarily focused upon the activities of Mr. R. F. Schroeder, an employee of defendant who sells the defendant's product line which includes the alleged infringing products.[2]

Since the defendant first commenced selling the accused product in 1967, its activities in the Northern District of Ohio with regard thereto have been maintained through Mr. Schroeder, whose base of operations is from his residence in Twinsburg, Ohio, within this judicial district. His sales activities, however, are not limited to this area, but also presently include areas in Indiana, Kentucky, Tennessee, West Virginia, Pennsylvania, New York and two cities in Canada. It would appear that Mr. Schroeder aptly described the nature of his employment when, in his deposition, he stated that:

I live in a car, you might say . . . Just get in the car and go every day

Mr. Schroeder has testified that there is a particular portion of his home set aside for business purposes. He described it as follows:

. . . I have a little room adjacent to the familyroom, where I have the desk and my files and paper work, very small portion of it, oh, nine feet by nine feet. That's about it.

Mr. Schroeder keeps his catalogues and sample materials in this office area, and conducts all his business affairs from it when not traveling on the road. Although the telephone at his residence is listed personally, Mr. Schroeder stated that his customers know how to reach him at his residence for business purposes, and the telephone bill is paid by the defendant. In the event that he is not at home when a business call is received, Mr. Schroeder's wife takes his messages. Mr. Schroeder is not compensated by the defendant for the use of his residence, but does take a tax deduction as a business expense.[3]

With regard to Mr. Schroeder's business activities, it appears that he is subject to a substantial degree of control by the defendant. Mr. Schroeder covers his territory so as to see each major customer approximately every six weeks. An itinerary for such travel is prepared and submitted to the home office two weeks in advance of the planned travel. Any change in the plans must be confirmed with the home office. For approximately 65 percent of his customers, those whom Mr. Schroeder considers "impor-

---

2. There is also in the record evidence regarding the relationship between the defendant and an Akron, Ohio firm, C. F. Marshall & Co. In light of the decision reached herein, it is not necessary to consider that aspect of the case in detail. However, it does not appear that the representation of the defendant by that firm would be sufficient to support venue herein.

3. While it does not appear in Mr. Schroeder's deposition, at the oral arguments on the motion it was represented that the area in question was added to the Schroeder residence for the specific purpose of serving as Mr. Schroeder's business office.

tant", a call report is submitted to the home office reflecting the visit to that customer. Mr. Schroeder is also required to submit a weekly call report form reflecting all customers contacted during the week, including those for whom a separate call report had previously been submitted.

Most of Mr. Schroeder's selling is done from catalogues containing small samples of the goods. Technical test data is utilized as a part of such presentation. If a larger quantity of sample material is required, Mr. Schroeder arranges for the mill to send it to the customer. He will also make the initial investigation of complaints in his territory.

The defendant compensates Mr. Schroeder on a salary plus commissions basis, the salary being guaranteed. All travel and sales expenses are reimbursed by the defendant on the basis of a weekly expense report submitted by Mr. Schroeder.

From the briefs of counsel, and the Court's research on the subject, it does not appear that in any reported decision in which the issue has been specifically considered the activities of a salesman operating from his residence have been held sufficient to create a regular and established place of business within the meaning of 28 U.S.C. § 1400(b).[4] In this Court's opinion, that line of authority is based upon an unnecessarily narrow interpretation of certain Supreme Court decisions and an outmoded view of the realities of the commercial world.

Many of the decisions which reject the concept of a salesman's residence as a regular and established place of business trace back to the ruling in W. S. Tyler Co. v. Ludlow-Saylor Wire Co., 236 U.S. 723, 35 S.Ct. 458, 59 L.Ed. 808 (1915), as support for that position. The facts of that case, in this Court's opinion, do

not warrant such conclusion. In the *Tyler* case, the sales representative was not in the exclusive employ of the defendant and, in an eighteen-month period, had made but one sale of the accused product in the jurisdiction, the purchase of which was for the specific purpose of affording a basis for the suit. The court specifically found that such sale "did not constitute an infringement of appellant's patent, within the district where suit was brought." *Id.*, p. 725, 35 S.Ct., p. 459.

The Supreme Court's rulings in Stonite Products Co. v. Lloyd Co., 315 U.S. 561, 62 S.Ct. 780, 86 L.Ed. 1026 (1942); Fourco Glass Co. v. Transmirra Products Corp., 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957) and Schnell v. Eckrich & Sons, 365 U.S. 260, 81 S.Ct. 557, 5 L.Ed.2d 546 (1961), are also often cited, and language therein quoted, in support of the proposition that the term "regular and established place of business" excludes a salesman's residence. Each of those decisions involved a narrow specific question of law and, in the Court's opinion, none requires such a holding, although certain language, read out of context, might indicate that to be so.

In the *Stonite Products* case, supra, the court stated that "the only question presented for our determination", was the relationship of the special patent venue statute and a general venue statute. In the course of the opinion, it was pointed out that the original patent venue statute, which allowed suit to be maintained "wherever the defendant could be found", was narrowed in 1887 to do away with "the abuses engendered by this extensive venue" 315 U.S. 561, 563, 62 S.Ct. 780, 781. Those abuses entailed requiring defendants to litigate the validity of patents in far-flung areas, having little relationship to the dispute at hand.[5] However, the exact

---

4. The cases on this subject are collected at 12 A.L.R.Fed. 502, 553.

5. It is interesting to note that the 1887 statute provided for venue in patent actions "only in the district of which the defendant was an inhabitant, except that in diversity jurisdiction cases suit could be started in the district of the plaintiff's or the defendant's residence." 315 U.S. 561, 563–564, 62 S.Ct. 780, 781.

scope of the 1887 Act became the subject of uncertainty as a consequence of the ruling in Re Hohorst, 150 U.S. 653, 14 S.Ct. 221, 37 L.Ed. 1211 (1893). As a consequence, the statute was again amended in 1897 to "define the exact jurisdiction of the federal courts in actions to enforce patent rights and thus eliminate the uncertainty produced by the conflicting decisions on the applicability of the Act of 1887." 315 U.S. 561, 565, 62 S.Ct. 780, 782. The 1897 patent venue statute, which the court held to be exclusive of the general venue statute, was substantively equivalent to Section 1400(b). In finding that enactment to be controlling on the question of venue in patent cases, the Supreme Court made no findings as to the scope thereof.

Fifteen years after the *Stonite Products* ruling, the Supreme Court decided the case of Fourco Glass Co. v. Transmirra Products Corp., supra. Therein, the court recognized that the question of law presented was "not legally distinguishable" from that of the *Stonite* case, and that the issue to be decided was whether the 1948 revision and recodification of the Judicial Code had worked a change in the substantive law. The court's conclusion that "28 U.S.C.A. § 1400(b) is the sole and exclusive provision controlling venue in patent infringement actions", 353 U.S. 222, 229, 77 S.Ct. 787, 792, sheds no light on the scope of Section 1400(b).

In Schnell v. Eckrich & Sons, supra, the court held that by assuming the defense of an action against one of its customers the defendant had not waived the venue requirements of Section 1400(b). It was argued that the defendant's conduct should be deemed to amount to a general appearance, waiving venue, although the defendant had moved to dismiss the complaint against it for lack of venue. In holding that venue had not been waived, the Supreme Court applied the general rule regarding venue enunciated in Olberding v. Illinois Cent. R. Co., 346 U.S. 338, 340, 74 S.Ct. 83, 85, 98 L.Ed. 39 (1953) (not a patent case) that:

> The requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given a "liberal" construction. 365 U.S. 260, 264, 81 S.Ct. 557, 560.

While it is clear from the opinion, and the source thereof, that the above quote pertains to venue generally, the language has been seized upon by some lower courts in subsequent rulings as having special significance to the scope of Section 1400(b). This Court cannot agree with that view.

While of no more pertinence to the question at hand than the decisions discussed above, the latest decision of the Supreme Court with regard to Section 1400(b) represents a retreat from the rigid position that it is the only statute under which venue may lie in a patent case. Brunette Machine Works, Ltd. v. Kockum Industries, Inc., 406 U.S. 706, 92 S.Ct. 1936, 32 L.Ed.2d 428 (1972). In that ruling, the court held an alien defendant charged with patent infringement subject to venue under 28 U.S.C. § 1391(d). In the course of considering the background of Section 1400(b), the Supreme Court observed that, while the 1897 statute was at the time of its enactment more liberal than the general venue statute applicable to federal question actions, "ironically, changes in the general venue law has left the patent venue statute far behind". *Id.,* fn. 13.[6]

6. The Sixth Circuit Court of Appeals subjected an alien defendant charged with patent infringement to the jurisdiction of the United States courts almost sixty years before the *Brunette Machine Works* decision, Smith v. Farbenfabriken of Elberfeld Co., 203 F. 476 (CA 6, 1913). That result, however, was reached by the court sustaining venue under the patent statute by applying a very liberal view to the question of the defendant's maintaining a regular and established place of business by virtue of the activities of a domestic representative. The philosophy of that ruling is much broader than the restrictive view generally espoused regarding the requisites of a regular and established place of business.

As long as fifty years ago, the unfairness of permitting a defendant in a patent case to "hide" in its home district was recognized by a court in this district, Winterbottom v. Casey, 283 F. 518, 521 (E.D.Mich., 1922):

. . . if such a defendant could be sued only in the district of which it was an "inhabitant," as was required in another class of cases, it would compel the plaintiff and its witnesses to travel perhaps across the continent, although the alleged act of infringement might have been committed in a district near the plaintiff's own home. If, then, defendant has a branch of its business in the same district where it commits acts of infringement, it would seem fair to both parties to permit plaintiff to bring suit either in the district of the defendant's home; that is, the district of which the defendant is an inhabitant, or in the district where said defendant has committed the infringing acts and also has a "regular and established place of business."

That theory is even more applicable today, with the changes in communication and transportation arising from our modern technology.

In recent years, a number of courts have approached the matter of the general requisites of venue pursuant to Section 1400(b) in a more liberal manner, recognizing the realities of the modern-day commercial world. Representative of the opinions so expressed are the following:

The problem of determining when a corporation is doing business or has a regular and established business within a judicial district of which it is not a resident, has long been a vexatious one for courts. However, in recent years the tendency of the courts has been to prevent a corporation from interposing its corporate citizenship when its actions elsewhere are detrimental to others, and to require it to assume certain responsibilities in exchange for the privilege of obtaining a lucrative portion of its business from other areas. Lantini [Latini] v. R. M. Dubin Corp., 90 F.Supp. 212, 213–214 (N.D.Ill., 1950).

\* \* \* \* \* \*

. . . Both sides also agree, as International Shoe [326 U.S. 310, 66 S. Ct. 154, 90 L.Ed. 95] shows, that, with the growth in the last quarter of a century in both the size and complexity of modern American business and its methods, the law has been compelled, for the protection of the public which is affected by such business, to look with a more liberal eye upon the facts which constitute "doing business" by a foreign corporation, so as to make such corporation amenable to process, issued at the instance of a member of the public who claims to have been injured by this artificial entity created by the law. In the very recent case of McGee v. International Life Insurance Company, 78 S.Ct. 199, 201 [355 U.S. 220] [2 L.Ed.2d 223] the United States Supreme Court says in that regard:

"Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." Kerr v. Port Huron Sulphite and Paper Co., 157 F.Supp. 685, 686–687 (D.N.J., 1957).

\* \* \* \* \* \*

. . . Technical distinctions should not obscure the practical effects of

corporate activity. The nature of the employment relationship between it and its agent is not a significant difference upon which to base or deny venue. Sherman Paper Products Corp. v. Sorg Paper Co., 161 F.Supp. 44, 45 (E.D.Mich., 1958).

\* \* \* \* \* \*

. . . A foreign corporation should not be permitted to escape suit in a district based on alleged infringing sales, when it has systematically and continually solicited orders within the district and has permitted the product to be physically present in the district by equipping its sales representatives with product samples and catalogues for use in demonstration of the product within the district. . . .

. . . Thus the tendency has been to prevent corporations from interposing their foreign citizenship as a shield to venue when sufficient contacts exist with the forum in which suit has been brought. Watsco, Inc. v. Henry Valve Co., 232 F.Supp. 38, 46, 47 (S.D.N.Y., 1964).

In this Court's opinion, an unyielding rule that a regular and established place of business cannot arise by virtue of a salesman operating out of his residence is at odds with the practicalities and necessities of the business community. In many instances, by reason of the type of product involved, there is simply no need for a sales representative to maintain a formal office, nor for the employers to maintain warehousing facilities in a particular locale. When the salesman spends virtually all his time on the road calling on customers, selling a product which, by reason of its bulk or specialized nature, can only be demonstrated through the use of small samples and supporting technical data, and such product is shipped directly to the customer upon completion of manufacture, the maintenance of an office, in the traditional sense, would be economically unsound.

At the hearing on the motion to dismiss, defendant's counsel conceded that if the defendant were to have rented a "hole-in-the-wall" office for Mr. Schroeder, utilizing an answering service and no other personnel, and that Mr. Schroeder was to perform his services in the same manner as he has, that would probably satisfy the requirements of Section 1400(b). While such concession is, of course, not conclusive, the Court believes, from an examination of the recent authorities (as discussed in 12 A. L.R.Fed. 502) that it is correct. It was maintained by defendant's counsel, however, that the law requires the Court to find that no regular and established place of business exists within this jurisdiction by reason of the fact that Mr. Schroeder used a specified portion of his residence for exactly the same purpose. Such a view of the law, in the Court's opinion, honors form over substance to such an extent that it must be rejected.

The argument that an "expansion" of the patent venue will result in the ability of patent holders to require alleged infringers to enter into litigation in distant forums bearing no reasonable relation to either party, the vice which the 1887 Act was intended to overcome, is not, in the Court's opinion, a substantial one. The availability of transfer pursuant to 28 U.S.C. § 1404(a) is a sufficient safeguard against such contingency.

As it is this Court's conclusion that neither the language of Section 1400(b), its legislative history, nor its interpretation by the Supreme Court on the Sixth Circuit Court of Appeals precludes a determination that the defendant has a regular and established place of business within this jurisdiction, the Court finds that, under the circumstances of this case, venue lies within the Northern District of Ohio.[7]

7. While the Court believes that this ruling may be the first to reach such a result, it does appear that in another case a salesman operating from his home was considered sufficient to create a regular and established place of business. In Leach Company v. General Sani-Can Mfg. Corp., 393 F.2d 183 (CA 7, 1968), the issue was

In reaching this conclusion, the Court has looked primarily to the necessity of the defendant maintaining a rented office for Mr. Schroeder's use. However, while that factor is of great importance, the Court has also taken into consideration all the other aspects of the relationship between Mr. Schroeder and the defendant. The Court's ruling should not be construed as standing for the proposition that every company which employs a sales representative who operates from his residence must be said to have a regular and established place of business in the judicial district of the salesman's residence. The Court believes that such a determination must be based on the facts in each case.

■ It therefore follows that the defendant's motion to dismiss the first and second counts of the complaint for lack of venue must be denied.[8]

■ Turning to the motion to transfer the action to the Western District of North Carolina, where the defendant's production facilities are located, the Court finds that the balance on that motion lies with the plaintiff.

Plaintiff is a small corporation and has its principal place of business within this district. The plaintiff's president is the named inventor of the patent in suit. It would be rather disruptive of the plaintiff's affairs to have several of its key officers, whose attendance would be required at trial, absent from the vicinity of the plaintiff's plant for an extended period of time. Plaintiff's brief in opposition to the motion to transfer designates several nonparty witnesses amenable to this jurisdiction, whom it is alleged will be necessary to the plaintiff's presentation.

It appears from Mr. Schroeder's deposition that the total yearly sales in his territory may amount to about $300,000.00, a reasonable proportion of which is generated within this jurisdiction. While employees of the defendant will be required to leave their place of employment to attend trial in this jurisdiction, it does not appear that their absence would be more damaging to the defendant's affairs than would be the absence of the plaintiff's employees from their place of employment to attend trial in North Carolina.

In the Court's opinion the plaintiff should be entitled to maintain its action in the district of its residence, in which district the defendant has availed itself of the privilege of conducting substantial business over a period of years.

The defendant's motions to dismiss the complaint and to transfer the action to the Western District of North Carolina will each be denied. The Court's denial of the motion to dismiss the complaint will be certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The Court is of the opinion that an immediate appeal from that order may materially advance the ultimate termination of the litigation, in that should the Court of Appeals reach a contrary conclusion on the question of venue the action, at least within this jurisdiction, may well be terminated.

It is so ordered.

whether an Illinois corporation was the alter ego of a New York corporation, so as to subject the latter to venue under Section 1400(b). The court concluded that venue was proper. The recitation of facts in the opinion discloses that the Illinois corporation was run from the apartment of its president, and there is nothing in the opinion indicating that it had any other facilities.

8. There is an alternative ground upon which the motion to dismiss could be resolved in plaintiff's favor. There is no question as to venue on the third cause of action. While defendant contends that the second cause of action is dependent on the first, the Court believes that, construing the complaint liberally in plaintiff's favor, the second cause of action is sufficient to state a claim for relief within the court's diversity jurisdiction, 28 U.S.C. § 1332, as to which venue lies under 28 U.S.C. § 1391. Under those circumstances, all three causes of action arising from the same acts, the first cause of action could be sustained under the doctrine of pendent jurisdiction. 3A Moore's Federal Practice ¶ 18.07 et seq.