BRUNSWICK CORPORATION, Plaintiff,

v.

SUZUKI MOTOR COMPANY, LTD., U.S. Suzuki Motor Corporation, Franklin Motors Incorporated, Mitsubishi Electric Corporation, and Hitachi Ltd., Defendants.

Civ. A. No. 82–C–654.

United States District Court, E.D. Wisconsin.

Nov. 30, 1983.

Glenn O. Starke and Thomas M. Wozny, Andrus, Sceales, Starke & Sawall, Milwaukee, Wis., for plaintiff.

Duffern N. Helsing, Tustin, Cal., for defendants Suzuki Motor Co., Ltd. and U.S. Suzuki Motor Corp.

Fred Wiviott, Whyte & Hirschboeck, Milwaukee, Wis., for defendant Franklin Motors Inc.

Walter S. Davis and Terrence J. Gaffney, Davis & Kuelthau, Milwaukee, Wis., and Paul L. Ahern, and Hoken S. Seki, Seki, Jarvis & Lynch, Chicago, Ill., for Mitsubishi Elec. Corp.

William J. Mulligan, Mulcahy & Wherry, Milwaukee, Wis., and John A. Fogarty, Jr., Kenyon & Kenyon, New York City, for defendant Hitachi Ltd.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

Brunswick Corporation ("Brunswick") is a manufacturer of outboard motors and stern drives and has its principal place of business at Fond du Lac, Wisconsin, in the Eastern District of Wisconsin. Brunswick owns various patents relating to outboard motors and related equipment, among them United States Letters Patents Nos. 3,805,759 and 4,088,108 relating to ignition systems, and 3,967,446 relating to an exhaust relief silencing apparatus.

On May 28, 1982, Brunswick brought this patent infringement action against Suzuki Motor Company, Ltd. ("Suzuki Motor"), a Japanese company; U.S. Suzuki Motor Corporation ("U.S. Suzuki"), the California subsidiary of Suzuki Motor; and Franklin Motors Incorporated ("Franklin Motors"), a local dealer of Suzuki products in Oak Creek, Wisconsin. All three of these defendants are charged with infringement of the three above-described patents by their manufacture and sale of Suzuki outboard motors. The suit also charges Hitachi Ltd. ("Hitachi"), a Japanese company, with contributory infringement of patents 3,805,759 and 4,088,108, and charges Mitsubishi Electric Corporation ("MELCO"), a Japanese company, with contributory infringement of patent 3,805,759. The contributory infringement allegations are based on the sale to Suzuki Motor of ignition systems manufactured by Hitachi and MELCO and incorporated in the Suzuki outboard motors. Jurisdiction of this court is predicated on 28 U.S.C. § 1338(a), and venue is alleged to be proper under 28 U.S.C. § 1400(b).

Franklin Motors has answered the complaint, denying infringement and the validity of the patents. MELCO and Hitachi have moved to dismiss this action based on lack of personal jurisdiction. U.S. Suzuki and its Japanese parent, Suzuki Motor, have moved to dismiss for improper venue.

## I. FACTUAL BACKGROUND

The ignition systems alleged to infringe Brunswick's patents are manufactured by Hitachi and MELCO in Japan where they are sold to Suzuki Motor, another Japanese concern. Suzuki Motor then incorporates the ignition systems, along with the allegedly infringing exhaust silencer, into outboard motors it manufactures in Japan. Some of these outboard motors are sold in Japan to U.S. Suzuki, a wholly-owned California subsidiary of Suzuki Motor. U.S. Suzuki imports the outboard motors into California and sells at least some of them to Franklin Motors in Wisconsin where they are sold to the public.

## II. PERSONAL JURISDICTION OVER HITACHI AND MELCO

Hitachi and MELCO are Japanese companies. Neither controls the disposition of its ignition systems once they are sold to Suzuki Motor in Japan; neither owns property or maintains a place of business in Wisconsin. Neither of these Japanese parents has an employee, a bank deposit, or a telephone listing in Wisconsin. Neither parent has entered contracts, made sales, performed services, or solicited business directly in Wisconsin.

Both Hitachi and MELCO manufacture products in Japan and sell them in the United States through subsidiaries that they partially or wholly own. Hitachi has seven such subsidiaries, among them the wholly-owned Hitachi America, Ltd. This subsidiary sold Hitachi products in Wisconsin during the years 1977–1982. It is agreed that these sales were not isolated or insubstantial in amount. The sales were

made through two retail dealers of Hitachi products located in Wisconsin.[1]

MELCO sells its products in the United States through its wholly-owned U.S. subsidiary, Mitsubishi Electric America, Inc. ("MEA"). MEA, in turn, sells MELCO products in Wisconsin through two additional subsidiaries wholly-owned by MEA: Mitsubishi Electric Sales America, Inc. ("MESA") and Mitsubishi Electronics America, Inc. ("MELA"). MESA and MELA sell MELCO products in Wisconsin to at least twenty-three retail dealers in the state. Between 1975 and 1982, MELCO's sales through its subsidiaries in Wisconsin amounted to $9,435,652.

MELCO and Hitachi each assert that they exercise no day-to-day operational control or general policy control over their wholly-owned subsidiaries. The subsidiaries have separate corporate charters, separate by-laws, separate accounting records, and boards of directors that meet separately. The control is interlocking only insofar as two Hitachi officers also hold honorary directorships with two United States subsidiaries.

None of the products MELCO and Hitachi sell through their subsidiaries in Wisconsin include outboard motor ignition systems or any other products accused of infringing the patents-in-suit.

Brunswick seeks personal jurisdiction directly over MELCO and Hitachi as Japanese parent companies. Accordingly, Brunswick has obtained extraterritorial service of process on MELCO and Hitachi in Japan. As an alternative ground for dismissal of the complaint, MELCO has challenged the sufficiency of Brunswick's extraterritorial service. The Court rejects this argument as without merit and re-

gards service upon both Japanese parents as proper.

Brunswick contends that through the substantial, continuous, and systematic activities of their wholly-owned subsidiaries, Hitachi and MELCO are "doing business" in Wisconsin, and thus they are subject to personal jurisdiction in this court under section 801.05(1)(d) of Wisconsin's long-arm statute. Wis.Stat. § 801.05(1)(d).

■ Hitachi and MELCO argue to the contrary that their United States subsidiaries are separate, independent entities whose activities cannot be ascribed to their corporate Japanese parents, particularly when none of the Wisconsin contacts involving those subsidiaries is related to the patents in suit. Furthermore, even if Wisconsin's long-arm statute permits an exercise of in personam jurisdiction over Hitachi and MELCO, such an exercise of jurisdiction, it is argued, would contravene the due process limitations of the Fifth Amendment.[2]

For MELCO and Hitachi to be subject to this court's in personam jurisdiction, service of process on those defendants must be authorized under Wisconsin's long-arm statute and must not offend the due process clause of the Constitution.

A. *The Wisconsin Long-Arm Statute*

■ The plaintiff has the burden of establishing jurisdiction under the Wisconsin long-arm statute, but the provisions of the act are to be liberally construed in favor of exercising in personam jurisdiction. *Lincoln v. Seawright,* 104 Wis.2d 4, 9, 310 N.W.2d 596 (1981). The statute represents an attempt to codify the due process requirements of "minimum contacts" set forth in *International Shoe Co. v.*

---

**1.** Hitachi refuses to disclose any dollar sales data of its subsidiary Hitachi America, Ltd., or to reveal the names of its two Wisconsin dealers unless Brunswick signs a protective order ensuring the confidentiality of the information. Brunswick refuses to do so. This dispute need not be resolved inasmuch as the parties have agreed that Hitachi has two dealers in Wisconsin and has sold products in Wisconsin to an extent that is not insubstantial.

**2.** When a federally created right is at issue, as here, the due process clause of the Fifth Amendment rather than that of the Fourteenth Amendment is the focus of analysis. In the context of amenability to process, though, the clauses are coterminous. *See Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 416 (9th Cir. 1977).

*Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Consequently, a showing of compliance with section 801.05 by the plaintiff raises a presumption of compliance with due process, a presumption the defendant is permitted to rebut. *Lincoln,* 104 Wis.2d at 10–11, 310 N.W.2d at 599.

■ Section 801.05(1)(d) of Wisconsin's long-arm statute provides as follows:

A court of this state having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to s. 801.11 under any of the following circumstances:

(1) Local presence or status. In any action whether arising within or without this state, against a defendant who when the action is commenced:

 \* \* \* \* \* \*

(d) Is engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise.

Wis.Stat. § 801.05(1)(d). This provision contemplates a requirement similar to that of "doing business" in Wisconsin, which calls not just for an isolated transaction but for "substantial" activities which are "continuous and systematic." *Modern Cycle Sales, Inc. v. Burkhardt-Larsen Co.,* 395 F.Supp. 587, 588–89 (E.D.Wis.1975). The Wisconsin Supreme Court has identified five factors influencing whether contacts with the forum state are substantial and not isolated: (1) the quantity of the contacts; (2) the nature and quality of the contacts; (3) the source of the contacts and their connection with the cause of action; (4) the interests of the State of Wisconsin; and (5) the convenience of the parties. *Nagel v. Crain Cutter Co.,* 50 Wis.2d 638, 648, 184 N.W.2d 876 (1970). These factors are to be balanced by the Court with an eye toward determining the reasonableness of subjecting the nonresident defendant to suit in Wisconsin.

■ The flexible language of this "doing business" provision was meant to define when a defendant is "present" in the forum state according to the less rigid, more qualitative due process standard mandated in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Personal jurisdiction under section 801.05(1)(d), Wis.Stat., demands that a defendant be sufficiently "present" in Wisconsin so that requiring him to come to this forum to defend himself does not offend traditional notions of fair play and substantial justice. Under the due process analysis of *International Shoe,* "presence" in the forum, so defined, is but one possible basis for personal jurisdiction, not necessary for jurisdiction but sufficient in itself. *See Hasley v. Black, Sivalls & Bryson, Inc.,* 70 Wis.2d 562, 576, 235 N.W.2d 446 (1975).

The issue confronting this Court is whether MELCO and Hitachi were "present" in Wisconsin for jurisdictional purposes when suit was instituted, i.e., whether their contacts with Wisconsin were sufficient to make them amenable to suit in the state under section 801.05(1)(d) of the long-arm statute without offending traditional notions of fair play and substantial justice within the meaning of *International Shoe.* More particularly, the Court must decide whether the "doing business" and the due process requirements for jurisdiction over the two Japanese parents are satisfied in this case simply by reference to the Wisconsin contacts of their wholly-owned subsidiaries.

■ MELCO and Hitachi argue principally that the activities of a subsidiary are relevant to establishing personal jurisdiction over the parent only when the subsidiary is the agent, instrumentality, or alter ego of the parent, permitting the Court to pierce the subsidiary's corporate veil.[3]

---

**3.** Traditional alter ego principles represent a body of corporate law designed to indicate under what circumstances liability may be fastened on one who owns or uses a corporation merely as an instrumentality to conduct his own personal business. When the corporate entity is used by its owner as a cloak for fraud, illegality, or injustice, the courts will disregard the corporation's shield of limited liability to treat the

They contend that such intimate control of the subsidiaries by the parents is lacking in this case. Secondarily, MELCO and Hitachi assert that even if the activities of their subsidiaries are ascribed to them for jurisdictional purposes, those activities do not amount to the "substantial and not isolated activities" required by the long-arm statute and the due process clause.

### 1. The Applicability of Cannon [4]

The defendants' principal argument is based on the Supreme Court's decision in *Cannon Manufacturing Co. v. Cudahy Co.*, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925). *Cannon* is often cited for the general rule that the mere fact that a wholly-owned subsidiary corporation is "present" or "doing business" in the forum state is an insufficient basis for invoking in personam jurisdiction over a nonresident parent corporation not otherwise present or doing business in the forum. The corollary to this rule is that when a parent controls its subsidiary in disregard of its independent corporate identity, jurisdiction over the subsidiary effects jurisdiction over the parent.

*Cannon* was a breach of contract action brought by a North Carolina corporation against both a Maine corporation and the wholly-owned subsidiary it employed to market the parent corporation's products in North Carolina. Domestic service of process was had on the local subsidiary but was not otherwise effected on the parent. Despite the parent's domination and control of its subsidiary, the Court held that the latter was not the agent of the former and that the formal corporate separation of the two entities was sufficiently real to avoid personal jurisdiction over the parent in North Carolina. 267 U.S. at 336–37, 45 S.Ct. at 251.

*Cannon* was decided twenty years before *International Shoe* and in a context in which extraterritorial service of process

on a nonresident corporation was statutorily unauthorized and constitutionally restricted by the old territorial due process notion that a state might exercise jurisdiction only over those persons present in the forum. Because the parent corporation in *Cannon* had not entered the forum but rather had elected to have a separate subsidiary do business there, the only way for the plaintiff to obtain service was to establish, on traditional corporate law principles, those facts that would permit a Court to pierce the corporate veil, find the subsidiary to be the alter ego of its parent, and treat the two corporations as a single entity. Since 1925, notions of due process and personal jurisdiction have evolved considerably. *See generally*, 4 Wright & Miller, Federal Practice and Procedure §§ 1066–69. Except in very limited circumstances, *Cannon's* use of alter ego theories for jurisdictional purposes has become an anachronism.

The traditional notion of personal jurisdiction was based on a territorial concept that permitted actions to be brought against a defendant only in the jurisdiction in which he was found. This territorial power theory of jurisdiction is expressed in the case of *Pennoyer v. Neff*, 95 U.S. (5 Otto) 714, 24 L.Ed. 565 (1877). During this period it was believed that a corporation existed as a legal person only in the state of its incorporation, and that it could be found, and thus subjected to suit, only there. *See Bank of Augusta v. Earle*, 38 U.S. (13 Pet.) 519, 588, 10 L.Ed. 274 (1839).

As the nation's economy developed and the corporate form became more common, the difficulty in reaching corporate defendants for suit in states where they did business but were not incorporated prompted courts to develop fictional theories to expand the jurisdictional power over foreign corporations. The first of these theories, the "consent" theory, assumed that a foreign corporation could transact business in

---

corporation and its owner as one for the purposes of liability.

**4.** Much of the discussion in the section parallels Judge Theis' excellent and exhaustive opinion in *Energy Reserves Group, Inc. v. Superior Oil Co.*, 460 F.Supp. 483 (D.Kan.1978).

a state only with the state's permission. The state, therefore, before giving its permission, could require the nonresident corporation to consent to service of process in that state by appointing an agent there for service of process.

The "presence" doctrine was another such fictional concept. Under that theory, a corporation was amenable to suit in the state if it was found to be carrying on enough business there to warrant the inference that it was present in that state. The concepts of "doing business" and "presence" came under increasing criticism as it became clear that they were little more than legal conclusions. It was in this context that the *Cannon* case was decided in 1925.

In 1945, the Supreme Court rejected the jurisdictional requirement that a nonresident defendant be "present" within the forum before service of process on the nonresident and jurisdiction would be proper. In *International Shoe*, the Court replaced the fictional theories and the purely quantitative "doing business" test with a qualitative standard based upon fundamental fairness to the defendant. Jurisdiction now could be obtained over a nonresident defendant if that defendant has a sufficient nexus or contact with the forum state to make it fair under the due process clause of the Constitution to require defense of the action in the forum.

Following the decision in *International Shoe*, therefore, the defendant's presence in the forum no longer was necessary for an exercise of personal jurisdiction over him if the due process requirements were satisfied. In *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), the Supreme Court further extended the application of *International Shoe*, holding that service of process on a defendant present in the forum, by itself, was no longer even sufficient to confer personal jurisdiction. All assertions of jurisdiction, wherever the defendant is served, now must be evaluated according to the due process fundamental fairness standard of *International Shoe*.

After the Supreme Court enunciated these more expansive jurisdictional standards, many states undertook to broaden their jurisdiction statutes to authorize extraterritorial service of process to the extent permitted under the Constitution. Wisconsin did so in enacting its comprehensive long-arm statute. Wis.Stat. § 801.05.

 In light of *International Shoe* and its progeny, reliance on the rule of *Cannon* and on alter ego principles of corporation law to determine a nonresident's "presence" is no longer relevant to the constitutional inquiry into whether an exercise of jurisdiction offends traditional notions of fair play. *See Energy Reserves*, 460 F.Supp. at 507–08. The Supreme Court, in *Cannon*, was not announcing a rule of constitutional import; rather, it was defining the parameters of a nonresident's presence in the forum under a state "doing business" statute. This Court believes that the constitutional analysis under *International Shoe* permits consideration of a nonresident's contacts with the forum state through its wholly-owned subsidiaries without regard to whether the affiliated corporations have maintained a formal separation of corporate identities. Thus, *Cannon* does not preclude this Court from considering the Wisconsin contacts of the MELCO and Hitachi subsidiaries in judging the fairness under the due process clause of requiring the Japanese parents to defend themselves in this forum.

 To obtain personal jurisdiction over a nonresident, however, the extraterritorial service of process must satisfy not only the constitutional constraints of due process but also the requirements of the state long-arm statute. Extraterritorial service of process under state long-arm acts became common following the decision in *International Shoe* and the demise of the fictional concept of "presence." *Cannon* predated this era, and it is doubtful whether its rule retains any vitality even in the context of service under modern long-arm statutes. One Court recently has observed:

*Cannon* did not decide whether the activities of a subsidiary in the forum State constitute sufficient minimum contacts with the parent to invoke personal jurisdiction over the parent pursuant to a State long-arm statute. Cases relying upon or distinguishing *Cannon* where the parent corporation is served pursuant to a long-arm statute, and where one of the contacts with the forum State is the parent's relationship with its domestic subsidiary, have only tended to confuse the controversy surrounding the *Cannon* doctrine. *Cannon* is simply inapposite to long-arm cases. The decision in *Cannon* was limited to an analysis of local service of process on a domestic subsidiary as a means of effecting process on an absent corporate parent.

*Consolidated Engineering Co., Inc. v. Southern Steel Co.,* 88 F.R.D. 233, 237–38 (E.D.Va.1980).

In *Energy Reserves Group, Inc. v. Superior Oil Co.,* 460 F.Supp. at 503, the district court speculated that two narrow statutory applications of the *Cannon* rule may have survived *International Shoe.* The first fact pattern is that found in the *Cannon* case itself. North Carolina authorized service of process on corporations "doing business" in the state as that concept was defined in 1925. Domestic service was had on the subsidiary corporation in North Carolina, and the issue was whether service on the subsidiary could constitute service on the parent. Under the alter ego doctrine, the business of the domestic affiliate in North Carolina becomes the business of the nonresident parent for purposes of personal jurisdiction if the parent uses its subsidiary as its agent or alter ego. This use of alter ego principles is of no consequence in the instant case because Brunswick has not relied upon service of the defendants' United States subsidiaries, but has effected extraterritorial service directly upon the Japanese parents, something that no state authorized at the time of the *Cannon* decision.

It could be argued that *Cannon's* alter ego theory may still be relevant, however,

under some modern long-arm statutes. For example, if a state long-arm statute permits extraterritorial service on one who, in person, does business in the forum, then agency or alter ego principles may continue to be necessary to extend service to nonresidents who do business in the forum, not personally, but through affiliates. In this way *Cannon* operates to stretch the long-arm statute to permit service on defendants beyond the literal reach of the statute. Of course, a state legislature could obviate even this application of alter ego principles by enacting a statute expressly permitting service on anyone who, in person or through a domestic subsidiary or agent, does business in the forum. *See, e.g., Escude Cruz v. Ortho Pharmaceutical Corp.,* 619 F.2d 902, 904 (1st Cir.1980) (Puerto Rico long-arm statute). The Supreme Court in *Cannon* specifically noted that it was not presented with a statute of such breadth. 267 U.S. at 336, 45 S.Ct. at 251.

■ Section 801.05(1)(d) of Wisconsin's long-arm statute authorizes service on "a defendant who when the action is commenced ... [i]s engaged in substantial and not isolated activities within this state ...." It is evident that the statute, by its literal language, does not authorize personal jurisdiction over a nonresident defendant who conducts business in Wisconsin only through affiliated corporations. The Court understands MELCO and Hitachi to be arguing that, under *Cannon,* they cannot be reached by this "doing business" provision without resort to alter ego principles to pierce the corporate veil of their United States subsidiaries. This contention is without merit because Wisconsin's comprehensive long-arm statute was meant to be construed much more broadly than the alter ego theories permit.

The question presented here is one of statutory interpretation, and this Court recognizes that a state's judicial interpretations of the reach of its jurisdictional statute are binding on the federal courts. Nevertheless, whether section 801.05(1)(d) permits judicial consideration of a subsidiary's

activities in the forum without a finding that the subsidiary is the agent or alter ego of the defendant parent appears to be a question of first impression.

A resolution of this issue must begin with the observation that the provisions of the Wisconsin long-arm statute are to be read liberally in favor of exercising jurisdiction. The act was intended to expand the scope of personal jurisdiction to the fullest extent possible under the Constitution. Defendants MELCO and Hitachi urge this Court to engraft *Cannon's* "doing business" test onto section 801.05(1)(d), and thus to ignore the extensive forum activity of an independent subsidiary when determining jurisdiction over the parent. To do so would repudiate the clear legislative intent behind the modern long-arm statute and set back 100 years the evolution of personal jurisdiction in Wisconsin.

This Court already has made clear that alter ego principles have no place in assessing the constitutionality of an exercise of jurisdiction once service is accomplished in accordance with state law. By resorting to the alter ego principles of corporate law in the application of the state long-arm statute, this Court would resurrect the obsolete notion of "presence" which the Wisconsin legislature sought to discard in light of *International Shoe.*

The statutory use of alter ego theories also would produce results inconsistent with the general treatment of foreign corporations under the "minimum contacts" approach of *International Shoe.* The inconsistencies derive from the vastly divergent standards applicable to each test. The factors indicating the fairness of requiring a defendant to answer in the forum state have little relation to the old standards used to pierce a corporate veil and to treat a parent and subsidiary as one for purposes of liability. The propriety of piercing the corporate veil rests upon an analysis of corporate law factors. The propriety of exercising personal jurisdiction under Wis.Stat. § 801.05(1)(d) rests upon a balancing of five factors set forth in *Nagel v. Crain Cutter Co.,* 50 Wis.2d 638, 184

N.W.2d 876 (1971), a qualitative approach much akin to the due process analysis. The results of these divergent standards are neither necessarily consistent nor equally attuned to the economic realities of the business community.

The Court, therefore, holds that the forum activities of affiliated entities may be considered in assessing both the sufficiency of service on the parent under Wisconsin's long-arm statute and the constitutionality of such service under the due process clause, notwithstanding the adherence of parent and subsidiary to the formalities of corporate separateness. The *Cannon* rule, employing alter ego principles, is inapplicable to both the statutory and constitutional sides of the jurisdictional coin in this case. Furthermore, a defendant's relationship with an affiliated corporation in the forum is, in itself, a relevant consideration in balancing the five *Nagel* factors to determine whether the defendant is engaged in substantial activities in Wisconsin. The nature of that relationship and the extent of the affiliate's activities within the forum are considerations bearing on the reasonableness of subjecting the foreign corporate defendant to jurisdiction under the state long-arm statute.

### 2. *Application of Law to Facts*

MELCO and Hitachi contend that even if the Wisconsin activities of their subsidiaries are deemed relevant to jurisdiction over them as parents, the contacts with the forum are not sufficient under section 801.05(1)(d). The Court holds, on the contrary, that the totality of the parents' contacts with Wisconsin satisfies the requirements of the state long-arm statute. Although the mere fact of a parent-subsidiary relationship alone will not support jurisdiction over the nonresident parent, that contact with the forum in conjunction with substantial and systematic activities of the subsidiary in the forum state will suffice.

In this case, the five *Nagel* factors to be considered in applying Wisconsin's long-arm provision, on balance, weigh in favor of personal jurisdiction. These factors are

meant to be applied in the form of a "reasonableness" equation with no one factor either necessary or overriding in importance. MELCO and Hitachi emphasize that there is no nexus between the forum activities of their subsidiaries and the subject matter of this patent suit. This relationship between the contacts and the cause of action is an important but not controlling criterion. Its absence in this case is not decisive because I find that the forum activities of the affiliated corporations here, in their quantity and quality, compel me to exercise jurisdiction over MELCO and Hitachi.

Both MELCO and Hitachi possess a continuing sales and marketing relationship with Wisconsin. Through their affiliated entities they have systematically injected themselves into the Wisconsin market place. This overall involvement in the state is important even though the defendants have not penetrated the local market to sell the particular devices alleged to infringe the plaintiff's patent. Moreover, this continuing relationship is hardly de minimis; no reasonable observer could find the local sales of MELCO and Hitachi products to be isolated or insubstantial. In my opinion, the market is a significant one.

Above all, the Court must not ignore the economic realities of the situation. It is naive to believe that MELCO and Hitachi do not exercise control over their local subsidiaries. The more pronounced this influence the less convinced I am that it would be unreasonable or inconvenient to require the alien parents to defend an action here. The economic benefits accruing to MELCO and Hitachi by virtue of their Wisconsin connections vis-á-vis the burden of appearing in this court persuade me that an exercise of jurisdiction under section 801.-05(1)(d), Wis.Stat., is reasonable in this case. The plaintiff has met its burden of establishing jurisdiction under Wisconsin's long-arm statute.

### B. *The Due Process Clause*

■ It is evident from the foregoing discussion that Wisconsin's long-arm statute mandates the same kind of qualitative inquiry into a defendant's relationship to the forum state as the Constitution requires under *International Shoe.* Indeed, the plaintiff having established compliance with section 801.05(1)(d) of the long-arm act, it is presumed, subject to rebuttal, that an exercise of in personam jurisdiction over MELCO and Hitachi will not run afoul of the due process clause. The defendants have not demonstrated that subjecting them to the jurisdiction of this court would offend traditional notions of fair play and substantial justice.

The defendants assert that they sold the allegedly infringing devices in Japan and thereafter had no control over, or knowledge of, the disposition and ultimate sale of those goods. Thus, MELCO and Hitachi have not purposely promoted the sales of those devices in Wisconsin or in the United States for that matter. They similarly contend that they could not reasonably anticipate being sued in Wisconsin for patent infringement on the devices. *Cf. Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137 (7th Cir.1975) (defendant purposely promoted local sales, knowing that patent infringement would occur).

The Court is not moved by this argument. The argument stresses the defendants' involvement with only the tainted exhaust and ignition devices and ignores the defendants' overall relationship with the forum state via their subsidiaries. While the suggestion of bad faith apparent in the *Honeywell* case is absent here, the Seventh Circuit's admonition to look to the economic and commercial realities of the matter applies with force. *Honeywell,* 509 F.2d at 1144. *See Kearns v. Wood Motors, Inc.,* 204 U.S.P.Q. 485, 490–91 (E.D.Mich.1978) (eschewing a mechanistic approach which ignores the substantial contacts of an affiliate because the defendant parent is not physically present in the forum state).

The sale of products indirectly in Wisconsin by means of a close business relationship with wholly-owned affiliate corporations enables MELCO and Hitachi to avail themselves of the benefits and protections

of the forum state. This local market for goods manufactured in Japan by the defendants surely has not been developed without the knowledge, support, and indeed control of both MELCO and Hitachi. Having to defend a lawsuit in Wisconsin should not come as either a great surprise or a great burden to these Japanese parents. The Court holds that it has in personam jurisdiction over MELCO and Hitachi. I am satisfied that this holding is neither unfair nor unjust.

The motions of defendants MELCO and Hitachi to dismiss the complaint for want of personal jurisdiction will be denied.

## III. VENUE

In addition to the jurisdictional attacks of MELCO and Hitachi, both Suzuki Motor and U.S. Suzuki have moved to dismiss for improper venue. As noted earlier, Suzuki Motor, a Japanese company, and its wholly-owned California subsidiary, U.S. Suzuki, are being sued by Brunswick for direct infringement of its patents by the manufacture and sale of Suzuki outboard motors. The complaint alleges venue in this patent infringement suit under 28 U.S.C. § 1400(b).

### A. *U.S. Suzuki Motor Corporation*

Venue in patent infringement actions is controlled exclusively by 28 U.S.C. § 1400(b). This special venue statute provides:

> Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

The burden of establishing that venue as to U.S. Suzuki is proper in this district is on Brunswick.

For purposes of section 1400(b), the residence of a corporation is its place of incorporation. U.S. Suzuki is a California corporation and thus does not "reside" in the Eastern District of Wisconsin for venue purposes. Venue will lie in this district, therefore, only if U.S. Suzuki has committed acts of infringement here and has a regular and established place of business in this district. The complaint sufficiently alleges that U.S. Suzuki has committed acts of infringement in this district. The issue is whether U.S. Suzuki has a regular and established place of business here. I conclude that it maintains such a "place of business" and that venue is proper.

The affidavits on record reveal that U.S. Suzuki has the following business involvement in Wisconsin. The defendant is represented in Wisconsin by three employees who reside here: (1) Henry Moose, a service representative who maintains an office at the defendant's Elm Grove, Illinois, facility; (2) Gary Walters, a sales representative for outboard motors; and (3) Ronald Klimcke, a sales representative for motorcycles. These employees make business calls from their home telephones and travel around the state by automobile calling on customers. Walters stores his files at home, and Klimcke stores his files in his automobile.

The defendant does not own, rent, or lease any office or other business facility in Wisconsin. U.S. Suzuki reimburses these employees for business telephone calls made from their home telephones and pays for their business, i.e., travel, expenses in Wisconsin, but does not otherwise contribute money toward the employees' homes. The business cards carried by the employees bear no Wisconsin telephone numbers. The Wisconsin residence of these employees have no signs or other displays indicating that they are places of business for U.S. Suzuki. Similarly, the employees store no inventory in their homes.

The defendants' two sales representatives solicit orders from Wisconsin dealers and transmit those orders directly to the defendant's California headquarters for acceptance; the employees have no authority to accept customer orders themselves.

Brunswick asserts that U.S. Suzuki is intimately involved in the Wisconsin market place and has adequate contact with the state to establish venue. Its products

presently are sold through twenty-four outboard motor dealers and forty motorcycle dealers in Wisconsin. U.S. Suzuki is licensed by the state Department of Transportation as a motor vehicle distributor, and its dealership agreements are negotiated in Wisconsin. The plaintiff refers also to the credit line defendant has extended to defendant Franklin Motors in Wisconsin and to the advertising expenditures U.S. Suzuki makes in Wisconsin.

Although these contacts emphasized by Brunswick may establish that U.S. Suzuki "does business" in Wisconsin for jurisdictional purposes, such contacts in themselves do not establish venue under 28 U.S.C. § 1400(b). Having a "regular and established place of business" involves more than "doing business." *Knapp-Monarch Co. v. Casco Products Corp.*, 342 F.2d 622, 624–25 (7th Cir.1965); *IPCO Hospital Supply Corp. v. Les Fils D'Auguste Maillefer*, 446 F.Supp. 206, 208 (S.D.N.Y. 1978). My conclusion is not predicated on such indicia of jurisdiction.

U.S. Suzuki relies on a string of Seventh Circuit cases that have applied the venue statute somewhat rigorously. *E.g., University of Illinois Foundation v. Channel Master Corp.*, 382 F.2d 514 (7th Cir.1967); *Knapp-Monarch Co. v. Casco Products Corp.*, 342 F.2d 622 (7th Cir.1965); *see Ashland Oil, Inc. v. Acme Resin Corp.*, 472 F.Supp. 1132 (E.D.Wis.1979). *Accord Dual Manufacturing & Engineering, Inc. v. Burris Industries, Inc.*, 531 F.2d 1382 (7th Cir.1976); *Grantham v. Challenge-Cook Bros., Inc.*, 420 F.2d 1182 (7th Cir.1969); *Shelton v. Schwartz*, 131 F.2d 805 (7th Cir.1942). I recognize the direction of this case law, but nevertheless believe that the economic realities of the instant dispute serve as a more appropriate guide to decision.[5]

In this case, Brunswick admits that U.S. Suzuki does not exercise control over an office in Wisconsin. Rather, Brunswick asserts that venue is satisfied here by a "network of continuous and systematic solicitation activities in Wisconsin by numerous employees of U.S. Suzuki of a product which, due to its nature and bulk size, does not of necessity require a formal office or warehouse facility within this district." Plaintiff's brief in opposition to motion by defendant, U.S. Suzuki Motor Corporation, to dismiss for improper venue, at 4. The nub of the plaintiff's argument is that although a defendant's presence in the district must be permanent and ongoing, it need not be fixed in a physical location or office. Brunswick cites *Shelter-Lite, Inc. v. Reeves Brothers, Inc.*, 356 F.Supp. 189 (N.D.Ohio 1973) for the proposition that venue may be satisfied without a formal office in the district when the size and bulk of the product is such that it is economically unsound for the defendant to maintain fixed office space or warehouse facilities. Recognizing "the practicalities and necessities of the business community," the Ohio district court held that venue may be satisfied even though the defendant's salesman spends virtually all his time on the road calling on customers and selling a product that can be demonstrated only in small samples and supporting technical data. 356 F.Supp. at 195.

This court does not lack venue over U.S. Suzuki simply because it rents no real estate in Wisconsin. Its employees are here. They own or rent homes here, and they essentially work out of their homes. U.S. Suzuki's motion to dismiss for improper venue under 28 U.S.C. § 1400(b) must be denied.

### B. *Suzuki Motor Company, Ltd.*

U.S. Suzuki's Japanese parent, Suzuki Motor, also has challenged venue in this case. Suzuki Motor is a Japanese corpora-

---

**5.** The Federal Courts Improvement Act of 1982, 28 U.S.C. §§ 171 *et seq.*, created a new court of appeals for the federal circuit capable of exercising nationwide jurisdiction over appeals in cases such as the one before me now. The new court was designed, in part, to iron out doctrinal inconsistencies among the circuits. The patent venue statute involved here demonstrates just such a need for nationwide uniformity. In this context, therefore, the Seventh Circuit no longer speaks in imperative tones.

tion and has its principal place of business in Japan. The Japanese parent does not own, rent, or lease property in this forum, does not maintain a bank account here, and does not make, use, or sell outboard motors or other products in Wisconsin. Thus, Suzuki Motor contends that venue does not lie properly in this district under section 1400(b) because it neither resides nor has a place of business here.

Instead, Suzuki Motor asserts that the convenience of the forum must be considered under 28 U.S.C. § 1404(a). Under this approach, California is the most convenient forum according to the defendant. The only Suzuki products sold in the United States emanate from U.S. Suzuki, its California subsidiary. This subsidiary is the principal defendant in this action, and it cannot be sued in Wisconsin under section 1400(b), Suzuki Motor contends. Because it would be unfair to deprive Suzuki Motor and U.S. Suzuki the benefit of a unified defense in the same forum and because California is a much more convenient forum, venue in this district, it is argued, is improper under section 1404(a).

The Court holds, however, that both sections 1400(b) and 1404(a) of Title 28 are inapplicable here. Suzuki Motor is an alien corporation which, under 28 U.S.C. § 1391(d), "may be sued in any district." Section 1391(d) applies to all federal actions against aliens, including patent infringement suits. *Brunette Machine Works, Ltd. v. Kockum Industries, Inc.,* 406 U.S. 706, 92 S.Ct. 1936, 32 L.Ed.2d 428 (1972). That provision supplants both sections 1400(b) and 1404(a) as the applicable venue statute as to the alien defendants in this case. Venue as to Suzuki Motor, therefore, is proper in the United States District Court for the Eastern District of Wisconsin notwithstanding the fact that venue here as to U.S. Suzuki is improper.[6]

### ORDER

IT IS THEREFORE ORDERED that:

1. The motion of Mitsubishi Electric Corporation to dismiss the complaint under Fed.R.Civ.P. 12(b)(2) & (3) is denied.

2. The motion of Hitachi Ltd. to dismiss the complaint under Fed.R.Civ.P. 12(b)(2) is denied.

3. The motion of Suzuki Motor Company Ltd. to dismiss for improper venue under Fed.R.Civ.P. 12(b)(3) is denied.

4. The motion of U.S. Suzuki Motor Corporation to dismiss for improper venue under Fed.R.Civ.P. 12(b)(3) is denied.

---

**6.** In its written argument to the Court, MELCO also challenged venue in this forum. As an alien defendant, MELCO likewise is subject to suit in this district under 28 U.S.C. § 1391(d). Its motion to dismiss for improper venue is denied on the same grounds.