NAGEL, Appellant, v. CRAIN CUTTER COMPANY, Respondent.*

*No. 107. Argued March 2, 1971.—Decided March 30, 1971.*
(Also reported in 184 N. W. 2d 876.)

* Motion for rehearing denied, with costs, on June 2, 1971.

640

For the appellant there was a brief and oral argument by *Keith Schoff* of Madison.

For the respondent there was a brief by *Rosenberg & Wiseman* of San Jose, California, and *La Follette, Sinykin, Anderson & Abrahamson* of Madison, attorneys, and *Jack M. Wiseman* of counsel, and oral argument by *Jack M. Wiseman* and *Christopher J. Wilcox* of Madison.

WILKIE, J. The only issue presented by this appeal is whether the trial court erred in determining that it had no personal jurisdiction over defendant. To decide this question, the various provisions of Wisconsin's long-arm

statute (sec. 262.05) must be examined and applied to the particular facts in light of due process requirements.[1]

The trial court made the following findings:

". . . By correspondence, the parties negotiated a patent licensing agreement, which the defendant executed in California. One conference relating to the agreement before its execution was held in the state of Illinois. There have been no contacts between the parties within the state of Wisconsin relating to this agreement except the receipt by the plaintiff of royalty checks mailed to him by the defendant from the state of California. . . .

"The plaintiff has alleged jurisdiction under Wisconsin statutes 262.05 (4) and 262.05 (5) (c)."

Sec. 262.05 (4), Stats., provides:

"(4) LOCAL INJURY; FOREIGN ACT. In any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, . . ."

The trial court was entirely correct in determining that this section dealt with tortious injuries, and was inapplicable to a case involving an alleged breach of contract, as here involved. Plaintiff's complaint sounds in contract, not tort; the damages he seeks are based on the amount due under the licensing agreement. To hold that subs. (3) and (4) apply to contract actions as well as tort actions would make sub. (5) unnecessary and redundant.

Sec. 262.05 (5), Stats., provides:

"(5) LOCAL SERVICES, GOODS OR CONTRACTS. In any action which:

"(a) Arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to perform services within this

---

[1] *Zerbel v. H. L. Federman & Co.* (1970), 48 Wis. 2d 54, 179 N. W. 2d 872.

state or to pay for services to be performed in this state by the plaintiff; or

"(b) Arises out of services actually performed for the plaintiff by the defendant within this state, or services actually performed for the defendant by the plaintiff within this state if such performance within this state was authorized or ratified by the defendant; or

"(c) Arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to deliver or receive within this state or to ship from this state goods, documents of title, or other things of value; or

"(d) Relates to goods, documents of title, or other things of value shipped from this state by the plaintiff to the defendant on his order or direction; or

"(e) Relates to goods, documents of title, or other things of value actually received by the plaintiff in this state from the defendant without regard to where delivery to carrier occurred."

Examining the specific provisions of sec. 262.05 (5), Stats., we must keep in mind that plaintiff is not suing on his contract to supply defendant with the blade component for the cutting tool, but is seeking to enforce the licensing agreement. No provision of sub. (5) is applicable to give Wisconsin courts jurisdiction.

The alleged breach of the licensing agreement is defendant's refusal to pay royalties to plaintiff. Hence the action does not arise "out of a promise . . . by the defendant to perform services within this state or to pay for services to be performed in this state by the plaintiff;"[2] nor does it arise "out of services actually performed . . . within this state . . ." by either party for the benefit of the other;[3] nor does it arise "out of a promise . . . by the defendant to deliver or receive within this state or to ship from this state goods, documents of title, or other things of value."[4] It also does

---

[2] Sec. 262.05 (5) (a), Stats.

[3] *Id.* at par. (b).

[4] *Id.* at par. (c).

not "relate to goods, documents of title, or other things of value shipped from this state . . . ," [5] or ". . . received by the plaintiff in this state . . . ." [6]

Appellant contends that his receipt of royalty payments, *i.e.*, *money* payment, constitutes "other things of value" within the purview of sec. 262.05 (5) (c)–(e), Stats. This can hardly have been the legislative intent.

If so, a serious due process problem would arise, since a plaintiff could perform services for a nonresident defendant in another state, with payment actually made to plaintiff in Wisconsin, and the defendant held subject to the jurisdiction of a Wisconsin court even though he has had no contact with this state. The mere sending of money into this state, without more, cannot constitute a substantial minimum contact within the purview of due process requirements. [7]

Appellant also contends that pars. (a) and (b) of sec. 262.05 (5), Stats., apply because under the licensing agreement plaintiff was to secure a patent on the cutting tool and actually did so. An examination of the licensing agreement sued upon discloses no such obligation. Defendant is obligated to pay royalties on all units sold, whether a patent is obtained or not. The agreement provides that the "Licensee . . . may at its own expense, and in its own name, file and obtain patent applications and patents on power tools of licensor's existing invention in countries other than United States and Canada . . . ." Our search of the agreement discloses no obligation on the plaintiff-licensor to obtain a patent on the tool.

We are satisfied that the specific provisions of sec. 262.05 (5), Stats., have no application in the present case.

---

[5] *Id.* at par. (d).

[6] *Id.* at par. (e).

[7] *See, e.g., Franklin Nat. Bank v. Krakow* (D. C. D. C. 1969), 295 Fed. Supp. 910, 918.

There remains the final question whether personal jurisdiction over defendant may be exercised under the general provisions of sec. 262.05 (1), Stats. This section provides that a court of this state may exercise jurisdiction over a nonresident defendant:

"(1) . . . In any action whether arising within or without this state, against a defendant who when the action is commenced:

". . .

"(d) Is engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise."

This section corresponds in a general way to the "doing business" statute common in other states,[8] and presents a jurisdictional ground which is distinct from the specific sections of the long-arm statute discussed above. Subs. (1) and (2) of sec. 262.05 recodify the jurisdictional grounds of prior law, while subs. (3) through (11) "incorporate grounds which expand the exercise of personal jurisdiction . . . ."[9]

Consequently the court must look to the nature of defendant's activities in Wisconsin to determine whether they were such as to constitute "substantial and not isolated activities . . ." within the meaning of sec. 262.05 (1) (d), Stats. This determination must, of course, be made in light of the requirements of due process.[10]

The substantiality-of-contacts standard is different under the general provision of sec. 262.05 (1), Stats., than it is under the more specific provisions of sec. 262.05

[8] *Travelers Ins. Co. v. George McArthur & Sons* (1964), 25 Wis. 2d 197, 203, 130 N. W. 2d 852.

[9] Revision Notes, 30 W. S. A. (1970 pocket part, p. 32), sec. 262.05.

[10] *Zerbel v. H. L. Federman & Co. supra,* footnote 1.

(3)–(11). This court recognized this in *Flambeau Plastics Corp. v. King Bee Mfg. Co.*[11] and *Dillon v. Dillon.*[12]

In *Flambeau Plastics,* which involved a single contract between a nonresident purchaser as defendant and a Wisconsin manufacturer as plaintiff, this court held the defendant amenable to Wisconsin litigation under sec. 262.05 (5) (a), Stats., but expressed doubt that the defendant's contact with this state was sufficient to make sec. 262.05 (1) (d) applicable "in an action totally unrelated to the transactions alleged [to be a substantial contact], even if the action were commenced while the transactions alleged could reasonably be said to be continuing." [13]

In *Dillon, supra,* while discussing the decisions of the United States Supreme Court relating to the exercise of personal jurisdiction over nonresident defendants, this court observed:

". . . the supreme court also made clear that 'minimum contacts' were not to be measured by mechanical or quantitative standards. Other factors were noted in determining whether activities were amenable to suits within a state. First, if acts were not related to the cause of action, the nature and quality of those activities would have to be more significant in order to subject the defendant to personal jurisdiction." [14]

The more specific provisions of sec. 262.05, Stats., contemplate situations where the cause of action "arises out of" or "relates to" the defendant's contacts with the forum state.[15] As has been noted:

---

[11] (1964), 24 Wis. 2d 459, 129 N. W. 2d 237.

[12] (1970), 46 Wis. 2d 659, 176 N. W. 2d 362.

[13] *Flambeau Plastics, supra,* footnote 11 at page 463.

[14] *Dillon, supra,* footnote 12, at pages 666, 667.

[15] *E.g.,* sec. 262.05 (3)–(6), Stats.

". . . An ordinarily insignificant contact with a state becomes constitutionally significant when it gives rise to the claim involved in the lawsuit." [16]

In *Zerbel, supra,* this court adopted an analytical framework for determining the substantiality of defendant's contacts for due process purposes. [17] This framework is equally applicable to cases in which the general provision, sec. 262.05 (1), Stats., is to be applied, albeit the required substantiality of contact will be greater. The factors that this court should consider, then, are the quantity, and the nature and quality of defendant's contacts; the source and connection of the cause of action with those contacts; the interest of the forum state in the action; and the convenience to the parties. [18] When analyzing the various factors, the court will weigh each and consider them all in relation to each other, rather than merely counting off the presence or absence of each, and the essential question will be the reasonableness of subjecting the particular nonresident defendant to Wisconsin litigation. [19]

Applying the analysis adopted by *Zerbel,* we note and consider the following facts:

1. *Quantity.* Defendant has one customer in Wisconsin, with whom it apparently transacts business by mail. On only one occasion has an agent of defendant entered Wisconsin on the business of defendant, and that in 1960. Defendant's gross sales to this single customer averaged less than $2,000 annually prior to 1969; in 1969 the gross sales were approximately $4,500.

2. *Nature and Quality of Contacts.* Defendant's contacts with Wisconsin have been almost exclusively with

[16] *Thompson v. Ecological Science Corp.* (8th Cir. 1970), 421 Fed. 2d 467, 470.

[17] From *Aftanase v. Economy Baler Co.* (8th Cir. 1965), 343 Fed. 2d 187, 197. *See Zerbel, supra,* footnote 1, at pages 64–66.

[18] *Id.*

[19] *Zerbel, supra,* footnote 1, at page 67.

a single customer. With the single exception of the 1960 visit noted above, defendant's business transactions with this customer have been conducted by a mail-order arrangement, with defendant sending catalogs to its customer, and the customer ordering defendant's materials by mail.

3. *Source of Cause of Action.* Plaintiff's cause of action in this case is entirely unrelated to defendant's activities in Wisconsin. As the trial court determined:

". . . By correspondence, the parties negotiated a patent licensing agreement, which the defendant executed in California. One conference relating to the agreement before its execution was held in the state of Illinois. There have been no contacts between the parties within the state of Wisconsin relating to this agreement except the receipt by the plaintiff of royalty checks mailed to him by the defendant from the state of California."

4. *Interest of Wisconsin in the Action.* As noted in *Zerbel, supra:*

". . . Wisconsin has a definite interest in providing a forum for its citizens and in some cases this has been given weight." [20]

However, this would appear to be the only interest which Wisconsin has in this action. All states have this interest, and in cases not coming within the purview of the more specific provisions of the long-arm statute, *i.e.,* causes of action arising out of a nonresident defendant's contact with this state, it is reasonable to require considerably more. For example, in *McGee v. International Life Ins. Co.,*[21] the state had a special interest in "providing effective means of redress for its residents when their insurers refuse to pay claims." To effectuate its public policy, California enacted a statute specifically holding nonresident insurers amenable to the jurisdic-

[20] *Id.* at page 66.
[21] (1957), 355 U. S. 220, 223, 78 Sup. Ct. 199, 2 L. Ed. 2d 223.

tion of California courts. The special public interest of the individual states in the insurance industry is well recognized. Similarly a state has a special interest in the activities of nonresident defendants which actually or potentially affect many of its citizens, *e.g.*, use of its highways, products liability, pollution, etc. While public interest is not enough, in and of itself, to constitutionally justify the exercise of personal jurisdiction over a foreign defendant, this court has indicated that it is a factor of some significance.[22]

5. *Convenience.* As also noted in *Zerbel, supra:*

". . . While this factor has rarely been decisive in the cases reviewed, it is frequently considered . . . ."[23]

"Convenience" is a factor which should never be decisive in determining jurisdiction, although it may lead a court to decline to exercise its jurisdiction.[24] The only element here involved which might be urged as favorable to appellant's position is that the licensing agreement provides for the application of Wisconsin law. However, as has been noted:

". . . [N]o court has held this factor alone to be conclusive on the issue of jurisdiction, if the defendant had no other contacts with the state."[25]

Considering all of these factors in light of the ultimate question of reasonableness, we are satisfied that to exercise personal jurisdiction over this defendant would be unreasonable.

*By the Court.*—Judgment affirmed.

[22] *Ministers Life & Casualty Union v. Haase* (1966), 30 Wis. 2d 339, 141 N. W. 2d 287, appeal dismissed, 385 U. S. 205, 87 Sup. Ct. 407, 17 L. Ed. 2d 301; rehearing denied, 385 U. S. 1033, 87 Sup. Ct. 739, 17 L. Ed. 2d 681.

[23] *Zerbel, supra,* footnote 1, at page 66.

[24] Sec. 262.19, Stats.

[25] *Franklin Nat. Bank v. Krakow, supra,* footnote 7, at page 918.