**BRADEN SHIELDING SYSTEMS, A UNIT OF JASON INCORPORATED, a Delaware corporation, Plaintiff,**

**v.**

**SHIELDING DYNAMICS OF TEXAS, a Texas corporation, Defendant.**

No. 92 C 1183.

United States District Court, N.D. Illinois, E.D.

July 8, 1992.

**820**

Richard J. Rappaport, Alison C.B. Laing, Ross & Hardies, P.C., Chicago, IL, Richard P. Vitek, Harnes, Dickey & Pierce, Troy, MI, for plaintiff.

Dennis C. Waldon, Andrew Lloyd Platt, Gottlieb & Schwartz, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Braden Shielding Systems ("Braden Shielding") makes shielding systems for magnetic resonance imaging devices ("MRIs"). An MRI is a highly sophisticated diagnostic instrument with which doctors can map a patient's tissues without surgery. Because the device uses magnetic fields, shielding is necessary to contain the fields and to prevent outside interference from distorting the image produced. Braden Shielding asserts that it holds the patent for its method of shielding MRIs.

In its complaint, Braden Shielding claims that defendant Shielding Dynamics, Inc. ("Shielding Dynamics"), sued as Shielding Dynamics of Texas, has infringed its patent by constructing an on-site shielding system for an MRI in Chicago ("Chicago Loop MRI").

### I.

Shielding Dynamics has moved to dismiss Braden Shielding's patent infringement action pursuant to Federal Rule of Civil Procedure 12(b) on the grounds that venue is improper and that the complaint fails to state a claim upon which relief can be granted. The motion is denied.

Venue in patent infringement actions is controlled in the main by 28 U.S.C. § 1400(b) (1988), which provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." Shielding Dynamics clearly has no "regular and established place of business" in the Northern District of Illinois, a point that is not contested by Braden Shielding. The question, therefore, is whether, for § 1400(b) purposes, Shielding Dynamics "resides" in the Northern District of Illinois.

Not surprisingly, "resides" turns out to be a term of art in the venue game. Shielding Dynamics argues that it resides in Texas, where it is incorporated, correctly citing *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957), as authority for this construction. It further argues that § 1400(b) controls venue in patent infringement cases exclusive of the general venue provision for federal civil actions, 28 U.S.C. § 1391(c) (1988). As amended in 1988, § 1391(c) states: "For purposes of venue *under this chapter*, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced...." (emphasis added). Read next to § 1400(b)—because that section is part of chapter 87 of title 28, too, § 1391(c) expands the definition of resides. To escape this breadth, Shielding Dynamics points to *Fourco*, in which the Supreme Court held that § 1400(b) alone governs venue in patent infringement actions. *Fourco*, 353 U.S. at 229, 77 S.Ct. at 791. Shielding Dynamics cites *Dual Manufacturing & Engineering, Inc. v. Burris Industries, Inc.*, 531 F.2d 1382 (7th Cir.1976), and *Joslyn Manufacturing Co. v. Amerace Corp.*, 729 F.Supp. 1219 (N.D.Ill.1990), as supporting the same rule.

Shielding Dynamics also contends that defending itself against this suit in the

Northern District of Illinois constitutes an unfair burden, most significantly because "[d]ocuments would be difficult, if not impossible to obtain, and necessary witnesses could not be compelled to testify." Reply at 3.

## II.

### A.

The Court of Appeals for the Federal Circuit hears appeals in patent cases from all judicial districts. Its rulings bind our patent decisions just as surely as do decisions from the Seventh Circuit generally. In *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574 (Fed.Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1315, 113 L.Ed.2d 248 (1991), the court found that amended § 1391(c) "redefines the meaning of the term 'resides' in" § 1400(b) for corporate defendants. *Id.* at 1578. Shielding Dynamics seems to argue only that insofar as *VE Holding* contradicts *Fourco, Fourco* should control until directly overruled by the Supreme Court; indeed, it cites *Joslyn* as support for this proposition. To the extent that *Fourco* and *VE Holding* conflict, we must favor *VE Holding* because it, and not *Fourco,* construes the amended § 1391(c). The prior version of that statute, construed in *Fourco,* is no longer in force. We note also that *Joslyn* was decided before the ruling from the Federal Circuit in *VE Holding.*[1]

Moreover, the apparent conflict between *Fourco* and *VE Holding* stems only from their final holdings, not from their respective analyses. Both cases resolved friction between the general venue provision, § 1391(c), and the provision specific to patent infringement cases, § 1400(b). *Fourco* favored the exclusivity of the specific provision; *VE Holding,* construing a revamped § 1391(c), favors reading the two sections together. *Fourco* asked whether Congress, in its 1948 revision and renumbering of the venue provisions, meant to change the way the earlier patent venue provisions had been interpreted.[2] The Court examined the Readers' Notes and the speeches of key Congressmen and found that "changes of language" were not intended to change the law as it then stood, namely that § 1400(b) should govern venue in patent infringement cases exclusive of the general venue provision in § 1391(c).

The court in *VE Holding* used the same analytic framework for its decision. The law as it stood before the 1988 revision was interpreted by *Fourco.* The amendments to § 1391 required the court in *VE Holding* to decide whether Congress sought to change the established substance of § 1400(b) by requiring the specific patent venue provision to be read in conjunction with the general venue provision. The court emphasized two things: (1) the statutory language added in 1988 to § 1391(c), "[f]or purposes of venue under this chapter," referred clearly to §§ 1391–1412 (and, necessarily, § 1400(b)), and thus amounted to the "exact and classic language of incorporation" that was missing in the 1948 version of § 1391(c) construed in *Fourco;* and (2) the drafters of the amendment were well aware of the issue of incorporation and so the obvious meaning of the words they chose should be respected. *Id.* at 1579, 1582; *see also Century Wrecker Corp. v. Vulcan Equip. Co.*, 733 F.Supp. 1170, 1173 (E.D.Tenn.1989) (granting motion to add an American sister corporation of a Canadian corporation as a defendant to an infringement action because, according to § 1400(b), as read in conjunction with § 1391(c), venue is proper over American corporation where it is subject to personal jurisdiction), *aff'd,* 1990 WL 178889, 1990 U.S.App. LEXIS 20,135 (Fed.Cir.), *aff'd*

1. *VE Holding* was decided on October 24, 1990, *Joslyn* on February 6, 1990.

2. In *Stonite Products Co. v. Melvin Lloyd Co.*, 315 U.S. 561, 62 S.Ct. 780, 86 L.Ed. 1026 (1942), the Court held that "the venue statute applying specifically to patent infringement litigation," 28 U.S.C. § 109 (1940), was "'the exclusive provision controlling venue in patent infringement proceedings'" and "'that Congress did not intend [§ 109] to dovetail with the general provisions relating to the venue of civil suits'" found at 28 U.S.C. § 113 (1940). *Fourco,* 353 U.S. at 224–25, 77 S.Ct. at 785 (quoting *Stonite,* 315 U.S. at 563, 566, 62 S.Ct. at 781, 782).

*without opinion,* 923 F.2d 870 (Fed.Cir. 1990).[3]

## B.

■ To establish proper venue in the present case, then, Braden Shielding must show that Shielding Dynamics was subject to personal jurisdiction in the Northern District of Illinois when this action was commenced. The party asserting jurisdiction generally bears the burden of proof. *O'Hare Int'l Bank v. Hampton,* 437 F.2d 1173, 1176 (7th Cir.1971); *see also Saylor v. Dyniewski,* 836 F.2d 341, 342 (7th Cir. 1988). A federal district court in Illinois has personal jurisdiction over a non-resident party "only if an Illinois state court could have such jurisdiction." *E.J. McGowan & Assoc., Inc. v. Biotechnologies, Inc.,* 736 F.Supp. 808, 809 (N.D.Ill. 1990) (citations omitted). An Illinois state court would have jurisdiction[4] whenever the defendant has "the minimum contacts with Illinois that due process requires...." *FMC Corp. v. Varonos,* 892 F.2d 1308, 1310 (7th Cir.1990); *Morgan v. GTECH Corp.,* No. 90 C 238, slip op. at 10 (N.D.Ill. Dec. 18, 1990) (1990 WL 251900) (1990 U.S.Dist. LEXIS 17,252).

Minimum contacts are present if there is " 'some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum State.' " *FMC Corp.,* 892 F.2d at 1313 (quoting *Jacobs/Kahan & Co. v. Marsh,* 740 F.2d 587, 592 (7th Cir.1984)); *see also Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958). Building the Chicago Loop MRI establishes Shielding Dynamics' minimum contacts with Illinois. Accordingly, because an Illinois state court would have personal jurisdiction over Shielding Dynamics, we have such jurisdiction.

Shielding Dynamics argues that "[t]he choice of the Northern District of Illinois as the forum for this action is clearly outlandish and intended to make it expensive, if not impossible, for Defendant to provide for its defense." Reply at 3. The notion of fair play appealed to here presupposes that Shielding Dynamics has not clearly acted via its "conduct and connection with the forum State" in such a way "that [it] should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Because Shielding Dynamics' transaction of business in the Northern District of Illinois so manifestly connects it to the forum state, we need not further weigh the fairness of personal jurisdiction here. *See, e.g., International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (personal jurisdiction limit-

---

**3.** It could at least be argued that the expansive reading of "resides" in § 1400(b) renders the second prong of the section redundant, because any defendant who "has committed acts of infringement and has a regular and established place of business" will necessarily be subject to personal jurisdiction in that judicial district. The amended § 1391(c), however, only changes the definition of resides in § 1400(b) when the defendant is a corporation. "[T]hus the second test for venue [under § 1400(b) ] remains operative with respect to defendants that are not corporations." *VE Holding,* 917 F.2d at 1580 n. 17.

**4.** The Illinois long-arm statute clearly reaches Shielding Dynamics. Ill.Ann.Stat. ch. 110, para. 2–209(a)(1) (Smith–Hurd 1983 & 1992 Supp.), states in relevant part:

Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and in an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

(1) The transaction of any business within this State[.]

Shielding Dynamics' admission that it contracted to and subsequently did build the Chicago Loop MRI clearly satisfies ¶ 2–209(a)(1).

Furthermore, Illinois amended its long-arm statute effective September 7, 1989, to provide that its reach is "co-extensive with minimum due process requirements." *FMC Corp. v. Varonos,* 892 F.2d 1308, 1311 n. 5 (7th Cir.1990). The relevant section now states that "[a] court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." Ill.Ann.Stat. ch. 110, para. 2–209(c) (Smith–Hurd 1983 & 1992 Supp.). Amended § 2–209(c) eliminates the need to employ the peculiar two-pronged inquiry used prior to 1989. *See Dehmlow v. Austin Fireworks,* 963 F.2d 941, 945 & n. 5 (7th Cir.1992).

ed by "traditional notions of fair play and substantial justice"); *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987) (fairness weighed by considering "the burden on the defendant, the interests of the forum State, ... the plaintiff's interest in obtaining relief....[,] 'the interstate judicial system's interest in [efficiency,] and the shared interest of the several States in furthering fundamental substantive social policies.' ") (citation omitted).

### III.

 Shielding Dynamics also argues that the complaint fails to assert that Braden Shielding has standing to sue because the ownership of the patent at the time of the infringement was not explicitly asserted. The complaint does allege that Braden Shielding "is the owner" of the relevant patent. Complaint at 2. A motion to dismiss should not be granted unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986).

To the extent that Shielding Dynamics may wish to pursue this issue, the proper vehicle would be a motion for summary judgment. However, a summary judgment-mobile may not carry Shielding Dynamics very far, given that Braden Shielding appends a copy of its patent assignment agreement to its response. Response Exh. A. It would appear that Braden Shielding's parent company has "the right to sue and collect damages for past infringements of said Patent Rights." *Id.* at ¶ 5.

Lastly, Shielding Dynamics argues that the complaint lacks any factual allegations amounting to infringement.[5] The purpose of the modern-day complaint has evolved to one of providing notice to the defendant of the nature of the action filed against him. *See generally* 2A James W. Moore & Jo Deshe Lucas, *Moore's Federal Practice* ¶ 8.13, at 8–61, 8–70 to 8–81 (2d ed. 1990) (discovery and pretrial conference have taken on the role of clarifying issues for trial). The president of Shielding Dynamics, Robert E. Crider, submitted an affidavit in which he noted that his company has only once done business in the Northern District of Illinois, and that was when it built the Chicago Loop MRI. As Braden Shielding points out in its response, that is precisely the subject of this action. Shielding Dynamics obviously has had adequate notice of the nature of the action against it. Furthermore, the number of the patent in question is given in the complaint, from which it is reasonable to conclude that Shielding Dynamics could determine the type of device alleged to have been illegally copied.

### IV.

Venue is proper in this case because Shielding Dynamics resides in the Northern District of Illinois for the purposes of 28 U.S.C. § 1400(b). The complaint adequately states a claim upon which relief could be granted. Accordingly, the motion to dismiss is denied. It is so ordered.

---

**5.** Braden Shielding points out that Federal Rule of Civil Procedure 84 states that the Appendix of Forms attached to the Federal Rules contains stock complaints meeting the test of Rule 12(b)(6). Braden Shielding's complaint, however, suffers from the comparison. Form 16, a suggested format for a patent infringement complaint, contemplates infringement in the form of "making, selling and using." Braden Shielding's complaint contains merely the allegation that Shielding Dynamics "has infringed ... and will continue to do so unless enjoined therefrom by this Court." Complaint ¶ 8. Including mention of the Chicago Loop MRI in the complaint would surely have saved both parties, and this court, the extra effort necessary to adjudicate this aspect of the instant motion.