**PKWARE, INC., Plaintiff,**

v.

**Timothy L. MEADE and Ascent Solutions, Inc., Defendants.**

**No. 99–C–0658.**

United States District Court, E.D. Wisconsin.

Jan. 7, 2000.

Adam L. Brookman, Milwaukee, WI, for plaintiff.

Timothy F. Mentkowski, Milwaukee, WI, Dwight D. Brannon, James P. Fleisher, for Defendants.

### DECISION AND ORDER

ADELMAN, District Judge.

Plaintiff PKWare, Inc. is a Milwaukee company which develops and licenses various software products. Plaintiff is the originator of certain software known as PKZIP software, and owns a patent, trademarks and copyrights on some of the technology related to the software. Defendant Timothy L. Meade is an Ohio resident in the business of translating and reselling software. In September 1992 plaintiff and Meade entered into a contract (the "agreement") under which Meade would convert some of plaintiff's software so that it could be used in environments other than those for which it was designed. At the time Meade entered into the agreement he was a sole proprietor doing business under the name "Ascent Solutions." In 1993 Meade incorporated his business in Ohio under the name Ascent Solutions, Inc. ("ASI") and became ASI's majority shareholder, president and CEO. (Meade Aff. 9/16/99.)

In 1999 plaintiff commenced this action against both defendants alleging a variety of claims under both state and federal law. These claims include (1) breach of contract, (2) copyright infringement, (3) patent infringement, (4) trademark infringement, (5) false designation of origin, (6) common law trademark infringement, (7) common law unfair competition, (8) dilution of mark, and (9) breach of duty of good faith and fair dealing. Pursuant to Fed.R.Civ.P. 12(b)(2) and 12(b)(3), defendants moved to dismiss for lack of personal jurisdiction and improper venue or, in the alternative, pursuant to 28 U.S.C. § 1404(a), for transfer of venue to the Southern District of Ohio. I now address defendants' motions.

### I. FACTUAL BACKGROUND

Plaintiff alleges that "on information and belief some time after the effective date of the Agreement, Meade ... purported to assign his rights and duties under the Agreement to [ASI]." (Compl. ¶ 2.) The agreement, however, provides that neither party may assign it without the other party's written consent. (Compl.Ex. I, ¶ 20.) The record contains no evidence that Meade formally assigned his interest to ASI or that plaintiff consented in writing to such an assignment. The parties agree, however, that ASI performed Meade's responsibilities under the agreement. Further ASI does not dispute that it was a party to the agreement despite Meade's having signed it while he was a sole proprietor. ASI agrees that it had a "business relationship [with] PKWare ... from September 1992 to the present." (ASI Mot. to Dismiss ¶ 10.)

Under the agreement Meade was to convert or "port" plaintiff's software so that it could have wider use. Porting is generally accomplished by rewriting a component of the software known as source code. Upon completion of the porting Meade was to send PKWare copies of the resulting software known under the agreement as "Resulting Programs and Software Collections." (Compl, Ex. I, 1.f.) Also, under the agreement plaintiff granted Meade a license to resell the converted software in return for a thirty percent royalty which

was to be paid monthly. Under the agreement Meade could license the source code to third parties and subcontract the conversion work with plaintiff's consent but was responsible for the work of subcontractors. Meade's royalty payments were to be accompanied by monthly reports setting forth the sales for each environment for which the software had been converted during the period that the agreement was in effect. Defendants sent plaintiff some royalty payments and sales reports. (Compl.¶ 23.)

Meade and plaintiff negotiated the agreement after lengthy communications by telephone, e-mail and writings between Meade in Ohio and plaintiff in Wisconsin. (Pl.'s Mem. in Opp'n, Ex. A ¶ 5.) During the course of the agreement Meade communicated with plaintiff's employees about matters related to the agreement on numerous occasions via telephone and e-mail. (*Id.*, Ex. C ¶ 4.) Meade also visited Milwaukee once to attempt to hire one of plaintiff's employees, Steven Burg, during which visit and subsequently "the ongoing relationship between PKWare and ASI was occasionally discussed." (*Id.* ¶ 5.) The agreement provided that it would be governed by Wisconsin law.

ASI operates an interactive website with an on-line store where users from around the world can place orders for ASI products including some PKZIP products and other software. (*Id.*, Ex. B ¶ 8.) ASI sells software products all over the world including in Wisconsin. ASI has also provided products and/or services to at least eighty-six different customers in Wisconsin over the course of the last several years with the majority of these sales occurring in the Eastern District of Wisconsin. (Pl.'s Supp'l Mem. in Opp'n, Ex. A and Pl.'s Second Supp'l Mem. in Opp'n, Ex. 1.) ASI also advertises on the internet search engine "AltaVista" and in *ComputerWorld* magazine and the *SciTech Science* catalogue, all of which have Wisconsin sub-scribers. (Pl.'s Mem. in Opp'n, Ex. B ¶¶ 10 and 11.)

## II. PERSONAL JURISDICTION

Plaintiffs have the burden of proving that personal jurisdiction exists, *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir.1997), although the burden is not a heavy one. *Johnson Worldwide Assoc., Inc. v. Brunton Co.*, 12 F.Supp.2d 901, 906 (E.D.Wis.1998). The plaintiff need only make a prima facie showing of the existence of personal jurisdiction. *Id.* The plaintiff is entitled to have all inferences from the record drawn in its favor. *RAR*, 107 F.3d at 1275. In considering the issue of personal jurisdiction I rely on the complaint and the affidavits and exhibits submitted by the parties.

Plaintiff alleges that subject matter jurisdiction is present here based both on diversity of citizenship and on the existence of a federal question. In diversity cases a federal court has personal jurisdiction over the parties only if a court in the state in which the federal court sits would have such jurisdiction. *Klump v. Duffus*, 71 F.3d 1368, 1371 (7th Cir.1995). To determine whether I have personal jurisdiction for this purpose, I first must decide whether the defendants are subject to personal jurisdiction under Wisconsin's long-arm statute and, if so, whether exercising jurisdiction under the statute is consistent with the due process requirements of the Fourteenth Amendment. *Daniel J. Hartwig Assoc., Inc. v. Kanner*, 913 F.2d 1213, 1216 (7th Cir.1990).

In federal question cases, by contrast, whether this court has personal jurisdiction depends on whether defendants are amenable to process from this court. *Johnson Worldwide* at 906. I look first to the applicable federal statute to see what it says about the matter. *See* Fed.R.Civ.P. 4(d)(1)(D).[1] *United States v. De Ortiz*, 910

---

1. Neither defendant claims that it was improperly served, only that this court has no personal jurisdiction.

F.2d 376, 382 (7th Cir.1990). Plaintiff's federal claims are based on the federal trademark, copyright and patent infringement statutes, none of which authorizes nation-wide service of process. Thus, personal jurisdiction will be established if the defendants would be subject to the jurisdiction of the Wisconsin courts. Fed. R.Civ.P. 4(K)(1)(A); *Johnson Worldwide* at 906.

In this case, then, no matter whether subject matter jurisdiction is based on diversity or the presence of a federal question, I have personal jurisdiction only if the defendants are subject to the jurisdiction of Wisconsin courts. *Graphic Controls Corp. v. Utah Med. Prods., Inc.,* 149 F.3d 1382, 1385 n. 2 (Fed.Cir.1998). Defendants are subject to the jurisdiction of Wisconsin courts if plaintiff's allegations and evidence satisfy the requirements of Wisconsin's long-arm statute, Wis. Stat. § 801.05, and if personal jurisdiction comports with due process.

### A. The Wisconsin Long–Arm Statute

The Wisconsin long-arm statute provides for personal jurisdiction in any action over "a defendant who when the action is commenced ... [i]s engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate or otherwise." Wis. Stat. § 801.05(1)(d). The statute is to be liberally construed in favor of exercising jurisdiction and is intended to confer jurisdiction to the extent allowed by due process. *Johnson Worldwide,* 12 F.Supp.2d at 906.

A person is engaged in substantial activities in the state when the activities are "systematic and continuous." *Harley–Davidson Motor Co. v. Motor Sport, Inc.,* 960 F.Supp. 1386 (E.D.Wis.1997). A defendant generally has "substantial and not isolated" contacts with the state if it "solicit[s], create[s], nurture[s], or maintain[s], whether through personal contacts or

long-distance communications, a continuing business relationship with anyone in the state." *Stauffacher v. Bennett,* 969 F.2d 455, 457 (7th Cir.1992). Even if a nonresident never sets foot in Wisconsin, the existence of a continuing business relationship with someone in Wisconsin is enough to warrant an inference that the defendant benefits from services provided in Wisconsin "and could therefore be required, as a quid pro quo, to submit to the jurisdiction of the state's courts." *Id.* at 457.

■ Five factors are relevant to the question of whether a defendant's Wisconsin contacts are "substantial" and not isolated for purposes of § 801.05(1)(d): (1) the quantity of contacts, (2) the nature and quality of the contacts, (3) the source of the contacts and their connection with the cause of action, (4) the interests of the State of Wisconsin, and (5) the convenience of the parties. *Nagel v. Crain Cutter Co.,* 50 Wis.2d 638, 648–50, 184 N.W.2d 876 (1971).

■ Because Meade and ASI are different entities I must find an independent basis for jurisdiction over each. However, ASI acknowledges that even though Meade signed the agreement as a sole proprietor he negotiated and carried out the agreement on behalf of ASI. While ASI disputes that it had sufficient Wisconsin contacts to create a basis for personal jurisdiction, it does not dispute that Meade's Wisconsin contacts are attributable to it.[2]

I begin the analysis by considering the *Nagel* factors, the first of which is quantity of contacts. The record shows that in the course of negotiating and maintaining a six year business relationship with a Wisconsin company Meade/ASI had many Wisconsin contacts. These contacts began before September 1992 when Meade negotiated the agreement. During negotia-

---

**2.** Plaintiff argues that Meade and ASI disregarded the corporate form and should therefore be treated as being identical (the alter ego theory). However, the record contains no evidence that defendants disregarded the

corporate form, and Meade presents an affidavit to the contrary. (Meade Aff. of Sep. 16, 1999.) Therefore, for purposes of the motions before me I reject plaintiff's alter ego allegation.

tions defendants contacted plaintiff in Wisconsin by phone, e-mail and writing numerous times. Once the contract was signed and the parties commenced operating under it defendants continued to have numerous contacts with plaintiff in Wisconsin also by telephone, e-mail and writing. These contacts included "discussions about the agreement between PKWare and ASI relating to PKZIP source code and porting the software to Unix platforms." (Pl.'s Mem. in Opp'n, Ex. C.) Defendants sent royalty checks and sales reports to plaintiff in Wisconsin in conformity with the agreement.

In addition, in about January 1997 Meade personally visited Wisconsin in an effort to persuade Steven Burg, a PKWare employee, to do work for ASI. During this visit and subsequently, Meade and Burg discussed the ongoing relationship between plaintiff and defendants. Thus, Meade and ASI had numerous contacts with Wisconsin between 1992 and 1998 in connection with their business arrangement. Defendants who maintain a continuing business relationship with a Wisconsin resident whether through personal contacts or long distance communications generally have "substantial and not isolated" contacts with the state. *Stauffacher*, 969 F.2d at 457.

The quality of defendants' contacts was also high for personal jurisdiction purposes. The contacts included one in-person visit, and numerous personal contacts via telephone, e-mail and other writing. With respect to the third *Nagel* factor, the source of the cause of action, plaintiff's lawsuit arises directly from defendants' Wisconsin contacts. Plaintiff alleges that defendants breached the agreement that resulted from and was maintained through defendants' Wisconsin contacts. Although the last two *Nagel* factors are less important, Wisconsin has an interest in protecting its residents from trademark, copyright and patent infringement as well as from breach of contract, and the convenience of the parties does not weigh heavily against this forum. *Johnson Worldwide*, 12 F.Supp.2d at 908.

It is also significant that defendants agreed that Wisconsin law would govern their contract with plaintiff. The invocation of forum law to govern a contract is a strong connection with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (although a choice of law provision standing alone cannot confer personal jurisdiction, it nevertheless is a factor to be considered in determining whether a defendant has invoked the benefits and protections of a state's laws for jurisdictional purposes).

Although each case must be determined on its own facts, jurisdiction over defendants pursuant to § 801.05(1)(d) is also supported by a comparison to prior cases. In *Harley–Davidson Motor Co.*, 960 F.Supp. at 1389, a defendant who had a twenty year distributorship relationship with a Wisconsin plaintiff was held to have engaged in substantial Wisconsin activity even though the relationship was conducted by telephone, mail and facsimile contacts. While the duration of the relationship was shorter here, a six year business relationship which included numerous communications to and from Wisconsin is enough to warrant an inference that ASI benefitted from services provided in Wisconsin and could therefore be required as a quid pro quo to submit to the jurisdiction of Wisconsin courts. *Stauffacher*, 969 F.2d at 457. Further, here, unlike in *Harley–Davidson*, defendants personally visited Wisconsin and defendant ASI sold products to a considerable number of Wisconsin customers.

Also, in *Miller Brewing Co. v. Acme Process Equip., Co.*, 441 F.Supp. 520 (E.D.Wis.1977), a Pennsylvania corporation was found to have conducted substantial and not isolated business activities in Wisconsin based on its extensive dealings with Miller in Wisconsin, occasional meetings in Milwaukee and, although of lesser importance, the defendant's listings in interstate publications that, as in the case of ASI, made their way to Wisconsin. Per-

sonal jurisdiction was proper even though the work done by defendants was performed outside of Wisconsin.

## B. Constitutional Considerations

■ Wisconsin courts presume that compliance with the Wisconsin long-arm statute satisfies the requirements of due process as well. The presumption may be rebutted by a defendant using the five *Nagel* factors discussed above, *Lincoln v. Seawright*, 104 Wis.2d 4, 10–11, 310 N.W.2d 596 (1981); *International Communications, Inc. v. Rates Tech., Inc.*, 694 F.Supp. 1347, 1350 (E.D.Wis.1988), or by looking to federal law.

■ Due process permits a Wisconsin court to exercise jurisdiction over a defendant who has "minimum contacts" with this state such that maintenance of a lawsuit here "does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940). The amount and kind of activities that make it reasonable and just to subject a defendant to jurisdiction depend upon the facts of each case. *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445, 72 S.Ct. 413, 96 L.Ed. 485 (1952).

■ What the *International Shoe* "minimum contacts" standard means in a particular case depends on whether the plaintiff wishes the court to assert "general" or "specific" jurisdiction. *RAR*, 107 F.3d at 1277. "Specific jurisdiction refers to jurisdiction over a defendant in a suit 'arising out of or related to the defendant's contacts with the forum.' " *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). When a controversy is related to or arises out of a defendant's contacts with the forum, a relationship among the defendant, the forum and the litigation is the essential foundation of personal jurisdiction. *Helicopteros*, 466 U.S. at 414, 104 S.Ct. 1868. General jurisdiction meanwhile is for suits neither arising out of nor related to the defendant's contacts, and is permitted only where the defendant has "continuous and systematic general business contacts" with the forum. *Id.* at 414 n. 9, 104 S.Ct. 1868.

■ Either way, the touchstone remains whether the defendant purposefully established minimum contacts in the forum state such that jurisdiction is fair and just for that case. *Burger King*, 471 U.S. at 474, 105 S.Ct. 2174. A defendant's conduct and connection with Wisconsin must be such that it "should reasonably anticipate being haled into court [here]." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Generally, "[w]hen a corporation 'purposely avails itself of the privilege of conducting activities within the forum State' . . . it has clear notice that it is subject to suit there." *Id.* at 297, 100 S.Ct. 559 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). Where a nonresident:

> has created "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Burger King*, 471 U.S. at 476, 105 S.Ct. 2174 (citation omitted).

■ The facts discussed above in regard to the long-arm statute, the five *Nagel* factors and comparable decisions show that jurisdiction over both Meade and ASI comports with due process. Both defendants' Wisconsin contacts were continuous and systematic. All of Meade's Wisconsin contacts and most of ASI's involved the agreement which is the subject of this lawsuit, thus constitutional specific jurisdiction requirements are met. Six years of continuous contact with a Wisconsin business pursuant to an agreement constitutes sufficient minimum contacts to satis-

fy due process concerns; defendants' own actions in their relationship with plaintiff created a substantial connection with this forum. *See Burger King,* 471 U.S. at 475, 105 S.Ct. 2174. Where a defendant who has purposefully directed his activities to forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. *Id.* at 477, 105 S.Ct. 2174.

Defendants present no basis for concluding that it would be unfair or unreasonable for Wisconsin to exercise jurisdiction over them. *Burger King* makes clear that the exercise of such jurisdiction is proper. In *Burger King* the Supreme Court found proper and fair a Florida court's exercise of jurisdiction over two Burger King franchisees located in Michigan. Even though the franchisees argued that they dealt mostly with Burger King's Michigan office, their contract recognized that Burger King's operations were conducted from Miami, directed all relevant notices and payments to be sent to Miami, and indicated that the agreement was subject to Florida law. Moreover, the parties' actual course of dealing confirmed that decision-making authority was vested in Miami, and a continuous course of direct communications by mail and telephone occurred between the franchisees and the Miami headquarters. *Id.* at 480–81, 105 S.Ct. 2174.

Here, as in *Burger King,* defendants created or assumed continuing obligations between themselves and a resident of this forum and thus purposefully availed themselves of the privilege of conducting business in Wisconsin. Defendants had numerous telephone, e-mail and written contacts with plaintiff in Wisconsin over a six year period. In addition, Meade, on behalf of ASI, personally visited Wisconsin once. *See id.* at 476, 105 S.Ct. 2174 (physical visits to the forum state enhance a potential defendant's affiliation with a state and reinforce the reasonable forseeability of suit there). In addition, defendants agreed that Wisconsin law would govern the agreement. The invocation of forum law to govern a contract is a strong connection with the forum. *Id.* at 482, 105 S.Ct. 2174.

Thus, based on the activities of the defendants over the six-year period prior to the commencement of the lawsuit, the exercise of jurisdiction by this court "does not offend traditional notions of fair play and substantial justice." *International Shoe,* 326 U.S. at 316, 66 S.Ct. 154. Both defendants could have reasonably anticipated being haled into court here. *See World–Wide Volkswagen,* 444 U.S. at 287, 100 S.Ct. 559. Their contacts with Wisconsinites in Wisconsin were not random, fortuitous or attenuated, *see Burger King,* 471 U.S. at 486, 105 S.Ct. 2174, but rather part of a continuing business relationship that created a substantial connection with this forum. *See id.* at 475, 105 S.Ct. 2174; *see also Helicopteros,* 466 U.S. at 416, 104 S.Ct. 1868.

Plaintiff also argues that defendants are subject to this court's jurisdiction based on other subsections of Wisconsin's long-arm statute, specifically the specific jurisdiction provisions of § 801.05(3), (4) and (5). Because I find that defendants are subject to this court's jurisdiction based on § 801.05(1)(d) it is unnecessary to analyze whether jurisdiction is also proper under the other subsections of the statute.

### III. VENUE

■ Defendants argue that venue is improper in this judicial district. The burden of showing that venue is proper is on the plaintiff. *Grantham v. Challenge–Cook Bros., Inc.,* 420 F.2d 1182, 1184 (7th Cir.1969). For venue to lie it must be proper as to both defendants and as to all claims. *Payne v. Marketing Showcase, Inc.,* 602 F.Supp. 656, 658 (N.D.Ill.1985); Georgene M. Vairo, *Determination of Proper Venue, in* 17 *Moore's Federal Practice* § 110.05 (Daniel R. Coquillette et al. eds., 3d ed.1997). Here, plaintiff brings a breach of contract and other state law claims as well as federal claims for trademark, copyright and patent infringement.

Because of the variety of plaintiff's claims several venue statutes are relevant.

## A. State Law Claims and Federal Trademark Claims

■ Venue for plaintiff's state law claims is governed by the general venue statute, 28 U.S.C. § 1391. The same is true of plaintiff's federal trademark related claims because the Lanham Act has no special venue provision. *Woodke v. Dahm,* 70 F.3d 983 (8th Cir.1995). Section 1391(b) provides that where, as here, subject matter jurisdiction is not founded solely on diversity, venue exists in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."[3] ASI can be regarded as residing in this district because, under 28 U.S.C. § 1391(c), a corporation is deemed to reside in a district in which it is subject to personal jurisdiction. Meade, however, is not a corporation and resides in Ohio. Therefore, venue is not proper as to either defendant under § 1391(b)(1).

■ However, § 1391(b)(2) provides that venue exists in this district if "a substantial part of the events or omissions giving rise to the claim occurred" here. Section 1391(b)(2) is the result of a 1990 amendment which changed the law to the extent that prior law had encouraged an approach that a claim could generally arise in only one venue. Under the amended law, however, venue may be proper in more than one district as long as a "substantial" part of the key events or omissions occurred in the district. *Harley–Davidson v. Motor Sport, Inc.,* 960 F.Supp. 1386, 1393 (E.D.Wis.1997); *Chemical Waste Management, Inc. v. Sims,* 870 F.Supp. 870, 875 (N.D.Ill.1994) (holding venue proper notwithstanding the possibility that defendants' activities may have been more substantial elsewhere; if the selected district's contacts are substantial,

it should make no difference that another district's are more so, or the most so) (internal citations omitted). In determining where substantial parts of the underlying events occurred I focus on the activities of the defendant and not those of the plaintiff. *Woodke v. Dahm,* 70 F.3d at 985. The determination is a federal issue whose answer depends on federal law. *See Leroy v. Great Western United Corp.,* 443 U.S. 173, 183 n. 15, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979).

■ In applying the "substantial part" test provided in amended § 1391(b)(2) to breach of contract cases, courts consider a number of factors including where the conduct underlying the breach occurred and where performance under the contract was to take place. *Consolidated Ins. Co. v. Vanderwoude,* 876 F.Supp. 198, 202 (N.D.Ind.1995). The "substantial part of the events or omissions" standard may be satisfied by a communication transmitted or not transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action. *Id.* at 200–01. In contract cases courts have held that the delivery or non-delivery of goods and the payment or non-payment of money were significant events providing a basis for venue in the district where they were to occur. *See American Carpet Mills v. Gunny Corp.,* 649 F.2d 1056, 1059 (5th Cir.1981) (place where goods were to be delivered was place of performance); *Gardner Eng'g Corp. v. Page Eng'g Co.,* 484 F.2d 27, 33 (8th Cir.1973) (venue existed at site where delivery was to be made); *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843–44 (9th Cir.1986) (venue for claim based on breach of contract is in place of intended performance rather than place of repudiation); *Oce–Industries, Inc. v. Coleman,* 487 F.Supp. 548, 552 (N.D.Ill.1980) (place where orders accepted and payment to be made important for venue purposes).

---

**3.** A third alternative exists when venue cannot be found under sections (1) or (2): in any district where any defendant is subject to personal jurisdiction.

In the present case defendants were obliged under the agreement to deliver copies of software, make royalty payments and send sales reports to plaintiff in this district and allegedly failed to do so. Defendants were also supposed to obtain approval for sublicensing and distributing in this district and allegedly failed to do so. Further, defendants allegedly attempted unsuccessfully to cure their default here. These alleged failures constitute a substantial part of the events or omissions giving rise to plaintiff's claim. Thus, based on the facts of the case and the foregoing authority, it is reasonable to conclude that venue exists in this district with respect to plaintiff's state law and trademark claims.

## B. Federal Copyright Claims

Title 28 U.S.C. § 1400(a) governs venue in copyright claims and provides that venue is proper in a district in which the defendant "resides" or "may be found." Under this provision, a defendant "may be found" in a district if the defendant is subject to personal jurisdiction in that forum. *Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co.,* 8 F.3d 441, 445 (7th Cir. 1993). Because I have found that defendants are subject to personal jurisdiction here venue is proper under 28 U.S.C. § 1400(a) with respect to plaintiff's copyright claims.

## C. Patent Infringement Claim

Title 28 U.S.C. § 1400(b) (1988) governs plaintiff's patent infringement claim. It provides that an action may be brought in a district "where the defendant resides or where the defendant has committed acts of infringement and has a regular and established place of business."

### 1. Claim Against ASI

It is not disputed that ASI has no "regular and established place of business" in this district. The question, therefore, is whether for § 1400(b) purposes ASI "resides" in the Eastern District of Wisconsin. ASI argues that it resides in Ohio where it is incorporated. Title 28 U.S.C.

§ 1391(c), however, provides that "[f]or purposes of venue *under this chapter,* a defendant that is a corporation shall be deemed to reside in a judicial district in which it is subject to personal jurisdiction" (emphasis added). Read in conjunction with § 1400(b)—because § 1400(b) is also part of chapter 87 of title 28— § 1391(c) expands the definition of "resides." *Braden Shielding Sys. v. Shielding Dynamics,* 812 F.Supp. 819, 820 (N.D.Ill.1992). Thus, it would appear that for purposes of § 1400(b), ASI resides in this district. ASI, however, contests this proposition and argues that *Fourco Glass Co. v. Transmirra Products Corp.,* 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957), provides that § 1400(b) by itself governs venue in patent infringement cases.

The identical issue was addressed in *Braden,* which I believe analyzed it correctly. *Braden* began by pointing out that district courts are bound by the decisions of the federal circuit in patent cases and that the federal circuit had recently addressed the issue in *VE Holding Corp. v. Johnson Gas Appliance Co.,* 917 F.2d 1574, 1578 (Fed.Cir.1990). The *VE Holding* court found that amended § 1391(c) "redefines the meaning of the term 'resides'" in § 1400(b) for corporate defendants. *Braden* then went on to show how the conflict between *Fourco* and *VE Holding* was more apparent than real and that both cases used the same analytic framework.

The amendments to § 1391 required the court in *VE Holding* to decide whether Congress sought to change the established substance of § 1400(b) by requiring the specific patent venue provision to be read in conjunction with the general venue provision. The court emphasized two things: (1) the statutory language added in 1988 to § 1391(c), "[f]or purposes of venue under this chapter," referred clearly to §§ 1391–1412 (and, necessarily, § 1400(b)), and thus amounted to the "exact and classic language of incorporation" that was missing in the

1948 version of § 1391(c) construed in *Fourco;* and (2) the drafters of the amendment were well aware of the issue of incorporation and so the obvious meaning of the words they chose should be respected. [*VE Holding* ] at 1579, 1582.

*Braden,* 812 F.Supp. at 821.[4]

Thus, for purposes of venue, ASI "resides" in this district if it was subject to personal jurisdiction here when the action was commenced. *Braden,* 812 F.Supp. at 822. As I have already determined that ASI is subject to personal jurisdiction, venue in this district for plaintiff's patent infringement claim is proper.

### 2. Meade

■■■ Section 1400(b) also governs venue with respect to plaintiff's patent infringement claim against Meade. Meade is not a corporation and resides in Ohio. Venue, therefore, is not proper here under the "resides" clause of § 1400(b) and will only lie under § 1400(b) if Meade "committed acts of infringement" and has a "regular and established place of business" in this district. "Having a 'regular and established place of business' involves more than 'doing business.'" *Brunswick Corp. v. Suzuki Motor Co.,* 575 F.Supp. 1412, 1423 (E.D.Wis.1983.) Meade does not have a regular and established place of business in this judicial district. He neither owns nor rents property, nor employs sales agents here. Therefore, venue is not proper in this district under § 1400(b) with respect to the patent infringement claim against Meade.

■■■ Plaintiff, however, asks the court to exercise pendent venue over the improperly venued claim. Meade objects pointing out both that patent infringement claims are governed exclusively by § 1400(b) and that venue must generally be established for each separate cause of action. Courts have sometimes relied on a theory of pendent venue analogous to the doctrine of supplemental jurisdiction. *See, e.g., Travis v. Anthes Imperial Ltd.,* 473 F.2d 515, 528–29 (8th Cir.1973) (when venue is proper on federal claims, it is also proper on pendent state claims); *Beattie v. United States,* 756 F.2d 91, 101 (D.C.Cir. 1984) (the doctrine of "pendent venue" is now well established). Generally, pendent venue will be applied if a court may also exercise supplemental jurisdiction. Vairo, *in* 17 *Moore's Federal Practice, supra,* § 110.05.

However, there is no practical reason to limit the application of pendent venue to pendent jurisdiction cases, and judges have recognized this by utilizing pendent venue in other situations. *Beattie,* 756 F.2d at 102. *See also Lamont v. Haig,* 590 F.2d 1124, 1135 (D.C.Cir.1978); *Relf v. Gasch,* 511 F.2d 804, 807 (D.C.Cir.1975) (citing *Laffey v. Northwest Airlines,* 321 F.Supp. 1041 (D.D.C.1971)) (the general rule that venue must be satisfied as to each cause of action may be undesirable when parties and proofs for all causes of action are identical). In *Zenith Radio Corp. v. Matsushita Elec. Ind. Co.,* 402 F.Supp. 262 (E.D.Pa.1975), plaintiff brought claims under two different federal statutes, one of which was properly venued and one of which was not. The court retained jurisdiction of both, holding that it would be senseless to bifurcate the case by dismissing or transferring some counts while retaining the others, since the facts underlying both claims were essentially the same. See also *Seamon v. Upham,* 563 F.Supp. 396, 399 (E.D.Tex.1983), where the court noted that pendent venue could be exercised if it furthered the goals of judicial economy, convenience and fairness to the litigants.

However, courts have been less willing to accept venue of a claim for patent infringement based on the doctrine of pen-

---

**4.** ASI seeks to evade the rule of *VE Holding* and *Braden* by citing *Shapiro v. Santa Fe Gaming Corp.,* No. 97–C–6117, 1998 WL 102677, 1998 U.S. Dist. LEXIS 2488 (N.D.Ill. Feb. 27, 1998). However, *Shapiro* did not deal with venue in patent cases or with the effect of the amendment to § 1391(c) on other sections of the same chapter.

dent venue. Patent infringement cases are governed by a specific venue statute, § 1400(b), and courts have expressed the view that application of the doctrine of pendent venue is inconsistent with the specific requirements of the statute. *See Hoffacker v. Bike House*, 540 F.Supp. 148 (N.D.Cal.1981); *Goggi Corp. v. Outboard Marine Corp.*, 422 F.Supp. 361 (S.D.N.Y. 1976); *Bradford Novelty Co. v. Manheim*, 156 F.Supp. 489, 491 (S.D.N.Y.1957) (Congress saw fit to narrowly confine the venue provisions applicable to this type of action). The Supreme Court's comments about § 1400(b) also counsel caution in regard to applying pendent venue to patent infringement cases. *See Schnell v. Peter Eckrich & Sons*, 365 U.S. 260, 264, 81 S.Ct. 557, 5 L.Ed.2d 546 (1961) ("[t]he requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given a liberal construction") (internal quotation marks and citations omitted). Additionally, no Seventh Circuit case authorizes the application of pendent venue in this case.

Thus, I decline to apply the doctrine of pendent venue to plaintiff's patent infringement claim against Meade. Therefore, venue with respect to the claim is improper in this district. Pursuant to Fed.R.Civ.P. 12(b)(3), Meade has moved to dismiss this claim. His motion will be granted.

**D. Transfer of Venue**

■ Defendants alternatively request that, pursuant to 28 U.S.C. § 1404(a), venue be transferred to the Southern District of Ohio. Section 1404(a) authorizes a district court to transfer a case to a district where the case might have been brought "for the convenience of the parties and witnesses, in the interest of justice." Plaintiff does not dispute that the action might have been brought in the Southern District of Ohio. In order to justify a transfer defendants must show that the Southern District of Ohio is a "clearly more convenient" forum. *Coffey v. VanDorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir.

1986). Thus, the question is whether defendants have made such a showing.

■ In evaluating a request for transfer under § 1404(a), a court should evaluate a broad set of considerations. *Id.* These include both public and private interest factors. *Harley–Davidson, Inc. v. Tristar Home Video, Inc.*, 851 F.Supp. 1265, 1270 (E.D.Wis.1994). Private interest factors include plaintiff's choice of forum, the situs of operative events, the convenience of the parties and witnesses relative to their respective residences and the parties' abilities to bear the expense of trial in a particular forum. Public interest considerations include judicial economy, the expeditious administration of justice, and the availability of compulsory process over possibly unwilling witnesses. *Id.; see also Northwestern Nat'l Ins. Co. v. Frumin*, 739 F.Supp. 1307 (E.D.Wis.1990).

■ Plaintiff's choice of forum must be accorded some weight, particularly because plaintiff resides in the forum. *Tristar*, 851 F.Supp. at 1267. Material events took place in both judicial districts. Events relating to the breach of contract claim are relatively evenly divided between the districts. With respect to the claims relating to infringement of intellectual property rights it is not clear that the alleged infringement took place more in one district or another. This is particularly true since one of ASI's principal methods of distribution is the internet.

ASI argues that transfer of this action to the Southern District of Ohio is supported by considerations as to the availability of up to twenty-three material witnesses. However, ASI's employees would presumably testify voluntarily, and ASI has not shown that any third-party witnesses would resist appearing in Milwaukee. With respect to the parties' convenience, defendants' headquarters are 300 miles from this district, not a great distance in today's world. Plaintiff will have its own Wisconsin-based witnesses who, if the case were transferred, would have the

same problem that defendant faces. Each party would prefer to litigate at home, but it is not unfair to defendant to litigate here. With respect to the relative inconvenience to the parties, it is not a sufficient reason to transfer a case and the transfer should be denied, if the transfer merely shifts the inconvenience from one party to another. *Heller Fin., Inc. v. Midwhey Powder Co. Inc.*, 883 F.2d 1286, 1293 (7th Cir.1989).

In regard to public interest considerations, judicial economy slightly favors this district. A fair amount of judicial time has already been invested in the matter in this district. Also, this district apparently has a slightly lower caseload than the Southern District of Ohio, thus the case is likely to be resolved faster here. Additionally, the parties have agreed that Wisconsin law governs the state law claims in the case. While a district court in Ohio could surely apply Wisconsin law, this court is likely to be more familiar with it.

In sum, defendants have not met their burden of showing that it is "clearly more convenient" to litigate this case in the Southern District of Ohio than in this district. Therefore, the motion for transfer of venue will be denied.

**THEREFORE, IT IS HEREBY ORDERED** that defendants' motion to dismiss for lack of personal jurisdiction and lack of venue are **DENIED**, except that defendant Meade's motion to dismiss plaintiff's claim of patent infringement is **GRANTED**. Defendants' motion to transfer venue pursuant to 28 U.S.C. § 1404(a) is **DENIED**.